747 P.2d 1214

Ziva BARMAT, on Behalf of herself and as personal representative of the Estate of Charles Barmat, Plaintiff/Appellant,

v.

JOHN AND JANE DOE PARTNERS A–D, et al., Defendants/Appellees.

No. 2 CA–CIV 5614.

Court of Appeals of Arizona, Division 2, Department A.

June 25, 1986.

W. James Harrison, P.C. by John Gabroy and Richard M. Rollman, Jones, Dickerman, Nuckolls, Edwards & Smith, P.C. by Sharmila R. Mahajan, Tucson, for plaintiff/appellant.

Gallagher & Kennedy, P.A. by Michael K. Kennedy and Chris J. Scheldrups, Phoenix, for defendants/appellees.

OPINION

FERNANDEZ, Judge.

Appellant Ziva Barmat, for herself and as personal representative of the estate of her husband, Charles Barmat, seeks reversal of the summary judgment entered in favor of appellee Edward Hochuli and his law partners (hereafter Hochuli) in appellant's legal malpractice action. The trial court found that Hochuli was immune from suit pursuant to A.R.S. § 20–675(A). We disagree and reverse.

This convoluted case began in February 1982 when a police officer named Jeffrey Ross was killed during a narcotics raid at the Ranch House Bar in Tucson. The Barmats owned the Ranch House Bar. Ross' widow filed suit against the Barmats in June 1983, and the Barmats' insurer, Ambassador Insurance Company, retained an attorney to represent them in the action. Ross served interrogatories on the Barmats and later requested answers by letter and finally by a motion to compel. The court ordered the interrogatories answered by November 21, 1983, and noted that sanctions might be imposed for any frivolous objections that might be made. Answers were filed on November 21, but objections were made to approximately two-thirds of the interrogatories.

Later in November of 1983, another trial judge granted a motion to compel answers to a second set of interrogatories that had been served on the Barmats and ordered production of documents that had been requested. The court also imposed attor-

ney's fees of $500 on the law firm that represented the Barmats. Charles Barmat died in late December 1983 before any of the ordered discovery was completed.

In January 1984 further monetary sanctions were imposed upon the Barmats' law firm, and the court ruled that, because of Charles Barmat's death, all objections to the interrogatories based on the Fifth Amendment were overruled. In mid-January, the parties agreed to settle the case for the insurance policy limits of $300,000, provided the money was paid within 45 days. Before the sum was paid, however, Ambassador Insurance Company became insolvent.

The Arizona Guaranty Fund was then activated to handle claims against Ambassador's insureds. The Fund retained Edward Hochuli to represent Barmat in April 1984. In the course of that representation Hochuli wrote several letters to Daryl Geller, a claims adjuster for GAB Business Service, Inc., the servicing facility which the Fund had retained to handle Ambassador's claims. In a letter written May 8, 1984, Hochuli advised Geller that the Fund had two alternatives available to resolve the Ross claim. The first was for the Fund to pay its statutory limit of $100,000 to Ross, and the second was for the Fund to pay nothing and for Barmat to assign to Ross her legal malpractice claim against the attorney retained by Ambassador. The Fund committee voted to adopt the second alternative, and Hochuli was advised of that fact.

Meanwhile, Ross had filed a motion to strike Barmat's answer for failure to comply with discovery orders. The trial court took the matter under advisement for a number of months while Barmat attempted to show the court why the motion should not be granted. Apparently the interrogatories could not be adequately answered by anyone except Charles Barmat.

While the motion to strike the answer was pending and while Hochuli was advising the Fund as to which course of action it should take, Barmat's personal attorney was urging Hochuli to have the Fund pay Ross its statutory limit of $100,000 in order to avoid Barmat's exposure to an excess judgment. The attorney had represented Barmat for some months, after Ambassador had informed the Barmats of the likelihood of an excess judgment in the case.

The answer was stricken on June 27, 1984, the court finding that Ross had suffered irreparable prejudice because of the Barmats' failure to comply with the discovery requests. Shortly thereafter Hochuli transferred the case to one of his partners. In September of 1984, both Hochuli's firm and the firm that had been retained by Ambassador to represent Barmat were permitted to withdraw. At the same time, the court approved a stipulated default judgment in the amount of $2,951,-446. The judgment was based on Ross' covenant not to execute against Barmat personally in exchange for Barmat's agreement to pursue any claims she might have against the attorney retained by Ambassador, and against Hochuli, Ambassador or the Fund. Ross was granted a security interest in the proceeds of any suit Barmat pursued.

This suit was filed in November 1984 against both Hochuli and the attorney who represented Barmat in the suit brought by Ross. The allegations against Hochuli are that he provided legal advice to the Fund while he represented Barmat and that the legal advice provided was contrary to Barmat's best interests. The complaint also alleges that Hochuli placed the Fund's interests ahead of Barmat's, that he disclosed confidential information to the Fund and that he inadequately represented Barmat at the hearing on the motion to strike Barmat's answer. Hochuli filed a motion for summary judgment in March 1985, claiming he was immune from suit. The motion was granted in June. This appeal was filed after Barmat's motion for reconsideration was denied.

## STATUTORY IMMUNITY

◼ The Arizona Guaranty Fund was created under the authority of A.R.S. § 20–662. An 11–member, appointed board oversees the Fund and is charged with investigating, compromising, paying and

denying claims against insolvent insurers. A.R.S. § 20–664. The board is also authorized to "[e]mploy or retain such persons as are necessary to handle claims and perform other duties of the fund." A.R.S. § 20–664(B)(2). Pursuant to A.R.S. § 20–667(B), the Fund may not pay more than $100,000 on any covered claim.

A.R.S. § 20–675(A), the immunity provision, reads as follows:

"There shall be no liability on· the part of, and no cause of action shall rise against, any member insurer, the board or its agents or employees, the director or representatives of the director for any action taken in the performance of their powers and duties pursuant to this article."

Hochuli contends he was an agent of the Fund and is thus immune from suit because he was retained by the Fund to represent Barmat. The basis for his contention is language in two cases. In *Parsons v. Continental National American Group*, 113 Ariz. 223, 228, 550 P.2d 94, 99 (1976), the supreme court stated as follows:

"When an attorney who is an insurance company's agent uses the confidential relationship between an attorney and a client to gather information so as to deny the insured coverage under the policy in the garnishment proceeding we hold that such conduct constitutes a waiver of any policy defense, and is so contrary to public policy that the insurance company is estopped as a matter of law from disclaiming liability under an exclusionary clause in the policy."

In the second case cited by Hochuli, Division One of this court merely repeated the language from *Parsons*. *Lake Havasu Community Hospital, Inc. v. Arizona Title Insurance & Trust Co.*, 141 Ariz. 363, 687 P.2d 371 (App.1984). In both cases an attorney retained by an insurance company to represent the insured divulged confidential information obtained from the insured to the insurance company and later attempted to utilize it to the insured's detriment and to the benefit of the insurance company.

Barmat contends that Hochuli's argument misapplies the holding of *Parsons*. She notes that he has presented no evidence of agency other than the fact that he was paid by the Fund. The evidence presented to the trial court indicates that, throughout his representation of Barmat, Hochuli insisted to Barmat and her personal attorney that he represented Barmat and not the Fund. In a June 11, 1984, letter to Barmat's personal attorney, Hochuli wrote as follows: "[Y]ou do not seem to be able to understand that I represent Mrs. Barmat and the estate and not the Guaranty Fund. I cannot tell the Fund what to do, they do not take directions from me, and the decision to make the offer set forth in my May 31 letter was the decision of and by the Fund." In his answers to interrogatories filed in this action, Hochuli denied that he attempted to protect the Fund's interests during his representation of Barmat. We note that the Fund is not a party to this action.

The exact relationship that exists between an attorney, an insurer who retains the attorney, and the insured represented by the attorney is not entirely clear. Under the Restatement (Second) of Agency § 1 (1958), "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Comment e to that section makes it clear that an attorney is an agent of his or her client.

Under the ethical rules that presently apply to attorneys (which did not become effective until after the conduct complained of in this case), "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person...." ER 1.7(b), Rule 42, Rules of the Supreme Court, 17A A.R.S. (1985 Supp.). The comment to that rule indicates that a lawyer may be paid by someone other than the client so long as the client is aware of the fact and consents, "and the arrangement does not compromise the lawyer's duty of loyalty to the client." The previous ethical rules were similar. Former DR 5–107, Rule 29(a), Rules of the

Supreme Court, 17A A.R.S. (1985 Supp.), provided

"(A) Except with the consent of his client after full disclosure, a lawyer shall not:

(1) Accept compensation for his legal services from one other than his client.

.  .  .  .  .

"(B) A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services."

Although the supreme court in *Parsons*, supra, referred to the attorney retained by the insurer as the agent of the insurance company, the court also stated "The attorney who represents an insured owes him 'undeviating and single allegiance' whether the attorney is compensated by the insurer or the insured." 113 Ariz. at 227, 550 P.2d at 98, quoting *Newcomb v. Meiss*, 263 Minn. 315, 322, 116 N.W.2d 593, 598 (1962). In addition, the court referred to the fiduciary relationship that exists between an attorney and an insured. To find that the attorney retained by an insurer is the agent of that insurer within the meaning of the immunity statute in question here would be inconsistent with the ethical rules that applied at the time of the conduct complained of in this case, as well as with those that currently apply. It would also be inconsistent with the clear language of *Parsons* as to the fiduciary relationship that exists between an attorney and an insured.

■ In interpreting a statute, we must determine the intent of the legislature in enacting it. *City of Phoenix v. Superior Court*, 139 Ariz. 175, 677 P.2d 1283 (1984). The purpose of the statutes that created the Arizona Guaranty Fund is to provide "a plan for the payment of claims ... to avoid excess delay in payment and financial loss to claimants or policyholders because of insolvency of an insurer...." Act of May 31, 1977, ch. 130, 1977 Ariz. Laws 574. Under the statute, the Fund is empowered to "[i]nvestigate claims brought against the fund and adjust, compromise, settle and pay covered claims to the extent of the fund's obligation and deny all other claims." A.R.S. § 20–664(A)(1). We hold

that, when the Fund retains an attorney to represent an insolvent company's insured in a claim against that insured, the attorney is the agent of the insured and not the agent of the Fund for purposes of the immunity statute. We note that the Fund was apparently aware of the problem since it retained an attorney specifically to represent the Fund during later negotiations in paying the claim involved here. The summary judgment entered in favor of Hochuli is reversed.

## EMOTIONAL DISTRESS DAMAGES

Appellant has also raised an issue with regard to the trial court's striking of her complaint allegations that she suffered emotional distress. Those allegations, however, were made against the attorney who was retained by Ambassador Insurance Company, and the summary judgment that was entered in his favor on that issue did not contain language pursuant to Rule 54(b), Rules of Civil Procedure, 16 A.R.S. Therefore, the issue is not properly before us on appeal.

Although Barmat's cause of action against Hochuli also included allegations as to damages for emotional distress and although one of the two bases of Hochuli's motion for summary judgment was that Barmat had sustained no compensable damages, the minute entry granting the summary judgment specifically states it was granted because Hochuli was immune from suit under A.R.S. § 20–675(A). Since the trial court did not rule on that issue with regard to Hochuli, we have no jurisdiction to address it on appeal.

■ The appellant will be awarded attorney's fees on appeal as requested upon filing a statement of costs pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S. (1985 Supp.), and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

HATHAWAY, C.J., and HOWARD, P.J., concur.