24 P.3d 593

**PARADIGM INSURANCE COMPANY, a foreign insurance company, Defendant Counter–claimant–Appellant,**

v.

**The LANGERMAN LAW OFFICES, P.A., a professional association, Plaintiff Counter–defendant–Appellee.**

No. CV–99–0412–PR.

Supreme Court of Arizona,
En Banc.

June 13, 2001.

Jones, Skelton & Hochuli by Robert R. Berk, Eileen J. Dennis GilBride, Phoenix, Attorneys for Paradigm Insurance Company.

The Cohen Law Firm by Larry J. Cohen and The Langerman Law Offices by Richard W. Langerman, Amy G. Langerman and Junker, Shiaras & Harrington, P.C. by Neil J. Harrington, Phoenix, Attorneys for The Langerman Law Offices, P.A.

Steptoe & Johnson, L.L.P. by Floyd P. Bienstock, Bennett Evan Cooper, Phoenix, Attorneys for American Insurance Association, Alliance of American Insurers, National Association of Independent Insurers, and Metro Phoenix Human Resource Association Amicus Curiae.

Ulrich & Anger, P.C. by Paul G. Ulrich, Phoenix, and Barger & Wolen, L.L.P. by John S. Pierce, David J. McMahon, San Francisco, CA, Attorneys for American International Companies Amicus Curiae.

## OPINION

FELDMAN, Justice.

¶1 The ultimate question in this case is whether an attorney may be held liable to an insurer, which assigned him to represent an insured, when the attorney's negligence damages only the insurer. We granted review because the issue is one of first impression for this court and is a matter of statewide importance. *See* Ariz.R.Civ.App.P. 23(c)(2). We have jurisdiction pursuant to Arizona Constitution Article 6, section 5.3 and A.R.S. section 12–120.24.

## FACTS AND PROCEDURAL HISTORY

¶2 The trial judge granted summary judgment in favor of The Langerman Law Offices (Langerman) and against Paradigm Insurance Co. (Paradigm), so we take the facts in the light most favorable to Paradigm. *Martinez v. Woodmar IV Condominiums Homeowners Ass'n,* 189 Ariz. 206, 211, 941 P.2d 218, 223 (1997). We thus assume, for purposes of this opinion, that the lawyer was negligent and caused damage to the insurer.

¶3 Paradigm issued an insurance policy covering Dr. Benjamin A. Vanderwerf for medical malpractice liability. Vanderwerf, Medical Director of Samaritan Transplant Service, a division of Samaritan Health Service (Samaritan), and another doctor were sued by Renee Taylor, who alleged that Vanderwerf committed malpractice by injuring her during a catheter removal procedure. Taylor included Samaritan as a defendant, alleging that at the time of the negligent act, Vanderwerf was acting as Samaritan's agent or employee.

¶4 Paradigm had assigned Langerman to defend other Arizona cases prior to the filing of *Taylor v. Vanderwerf.* In due course, Paradigm assigned defense of Taylor's claims to Langerman. Langerman undertook the assignment, with Vanderwerf evidently acquiescing, and appeared in the action as Vanderwerf's counsel. During the course of representation, Langerman advised Paradigm that it believed there was no viable theory of liability against Samaritan. Langerman, however, failed to investigate whether Vanderwerf was covered by Samaritan's liability

insurance and, thus, was unable to advise Paradigm whether the defense could be tendered to Samaritan.

¶ 5 After a time, Paradigm learned that Langerman had undertaken representation of a claimant who was bringing an action against another Paradigm-insured doctor. This, Paradigm claimed and Langerman denied, violated an oral agreement between the two in which Langerman promised not to represent any claimants against Paradigm's insureds. Based on this disagreement, Paradigm terminated Langerman's representation in *Taylor* and retained new counsel for Vanderwerf.

¶ 6 Vanderwerf's new lawyer discovered that Samaritan had liability coverage through Samaritan Insurance Funding (SIF) that not only covered Vanderwerf for Taylor's claim but probably operated as the primary coverage for the claim. New counsel consequently advised Paradigm that he should be permitted to tender the claim and defense to SIF and was instructed to do so. At least hypothetically this would be of some benefit to Vanderwerf: if SIF was determined to be the primary and Paradigm the excess carrier, Vanderwerf's malpractice protection for Talyor's claim would be increased to the combined limits of the two policies. Accordingly, new counsel tendered the claim to SIF, which rejected it on the grounds that the tender was untimely. *See Paradigm Ins. Co. v. Samaritan Ins. Funding Ltd.,* 1 CA–CV–99–0007 (Ariz.App. July 25, 2000) (mem.decision), *review denied* (Feb. 13, 2001).

¶ 7 *Taylor v. Vanderwerf* was eventually settled for an amount within Paradigm's policy limits. Thus, Vanderwerf was not injured by Langerman's failure to make a timely tender to SIF. However, Paradigm, compelled to act as Vanderwerf's primary carrier, was forced to settle Taylor's claim with its own funds and without being able to look to SIF for contribution or indemnification.

¶ 8 Langerman then presented Paradigm with its statement for legal services. Paradigm refused to pay, claiming Langerman had been negligent both in failing to advise it of SIF's exposure as the primary carrier and by not promptly tendering the defense. When Langerman sued for fees, Paradigm counterclaimed for damages. On summary judgment, the trial judge held that because there was no express agreement that Langerman could represent both Paradigm and Vanderwerf, no attorney-client relationship existed between Langerman and Paradigm. Thus, Langerman owed no duty of care to Paradigm and could not be held liable for negligence that injured only Paradigm but not Langerman's sole client, Vanderwerf.

¶ 9 Paradigm appealed, and the court of appeals reversed in part. *Paradigm Ins. Co. v. Langerman Law Offices,* 196 Ariz. 573, 2 P.3d 663 (App.1999). The court held that the trial judge erred in concluding there could be no implied attorney-client relationship between Langerman and Paradigm. Even without an express agreement, the court reasoned, Langerman could and did represent both parties. *Id.* at 576 ¶ 8, 2 P.3d at 666 ¶ 8. Adopting what it described as the majority rule in this country, the court concluded that absent a real or apparent conflict between the insured and the insurer, the lawyer assigned by the latter to represent the former actually represents both. *Id.* at 578 ¶ 17, 2 P.3d at 668 ¶ 17. Thus, Langerman "in fact provided legal services to both Paradigm and Dr. Vanderwerf." *Id.* at 579 ¶ 25, 2 P.3d at 669 ¶ 25. There was, therefore, a "dual attorney-client relationship" and a resultant duty such that Paradigm was "entitled to bring a malpractice action against Langerman." *Id.* at 579 ¶ 26, 2 P.3d at 669 ¶ 26.

## DISCUSSION

**A. Whether an express agreement is necessary to form an attorney-client relationship**

¶ 10 Langerman argues that, before an attorney-client relationship can form between an insurer and the counsel it retains to represent an insured, express mutual consent must be reached among all of the respective parties. We disagree. The law has never required that the attorney-client relationship must be initiated by some sort of express agreement, oral or written. Quite to the contrary, the current rule is described as follows:

A relationship of client and lawyer arises when: (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and ... (a) the lawyer manifests to the person consent to do so.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14. Indeed, comment c to section 14 indicates that either intent or acquiescence may establish the relationship. Even before adoption of section 14, our cases expressed a similar view. As a practical matter, "an attorney is deemed to be dealing with a client when 'it may fairly be said that because of other transactions an ordinary person would look to the lawyer as a protector rather than as an adversary.'" *In re Pappas*, 159 Ariz. 516, 522, 768 P.2d 1161, 1167 (1988) (quoting *In re Neville*, 147 Ariz. 106, 111, 708 P.2d 1297, 1302 (1985)). Thus, a purported client's "belief that [the lawyer] was their attorney" is crucial to the existence of an attorney-client relationship, so long as that belief is "objectively reasonable." *Id.*

¶ 11 Of course, we recognize that the circumstances of this case are materially different from those presented in *Neville* and *Pappas*, in which the relationship between lawyer and client evolved from business transactions. But neither our cases nor the RESTATEMENT takes the position that an explicit agreement is required to create an attorney-client relationship. Nor do we believe it would be good policy to adopt that view. Langerman erroneously relies upon *Barmat v. John & Jane Doe Partners*, 155 Ariz. 515, 747 P.2d 1214 (App.1986), and *Parsons v. Continental Am. Group*, 113 Ariz. 223, 550 P.2d 94 (1976), to support the proposition that an express agreement is necessary to form an attorney-client relationship. Neither *Barmat* nor *Parsons*, however, dealt with this precise question, and neither stands for that proposition. Instead, *Barmat* and *Parsons* address the issue of whether an attorney assigned by an insurer to represent an insured is under a primary duty to the insured, so that he must act in the insured's interest rather than that of the insurer. Both cases quite correctly hold that "the attorney who represents an insured owes him undeviating and single allegiance whether the attorney is compensated by the insur-

er or the insured." *Parsons*, 113 Ariz. at 227, 550 P.2d at 98; *Barmat*, 155 Ariz. at 518, 747 P.2d at 1216 (internal quotes and citations omitted).

¶ 12 The rule set forth in RESTATEMENT section 14 and our cases is, we believe, the better view. Thus, we conclude the trial judge erred in holding that an express agreement was required either to permit Langerman to represent Paradigm or for an attorney-client relationship to have formed between the two.

**B. Potential and actual conflicts of interest with the insurer as client**

¶ 13 Langerman contends that absent the consent of the insured, a lawyer assigned by an insurer to represent the insured forms an attorney-client relationship *only* with the insured and never with the insurer. Any contrary conclusion, asserts Langerman, inherently creates a strong potential conflict of interest for the attorney, weakens his "undivided allegiance" to the insured, and creates "situations rife with opportunities for mistrust and second guessing." Petition for Review at 6, 9.

¶ 14 Langerman's concern over conflicts of interest between attorney, insurer, and insured is not unfounded. This case presents the typical situation found when defense is provided by a liability insurer: as part of the insurer's obligation to provide for the insured's defense, the policy grants the insurer the right to control that defense-which includes the power to select the lawyer that will defend the claim. Charles Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?* 72 TEX. L.REV. 1583, 1594–95 (1994). But the fact that the lawyer is chosen, assigned, and paid by the insurer for the purpose of representing the insured does not automatically create an attorney-client relationship between the insurer and lawyer. *See* ¶ 10, *supra.* As comment f to RESTATEMENT § 134 states:

It is clear in an insurance situation that a lawyer designated to defend the insured has a client-lawyer relationship with the insured. The insurer is not, simply by the fact that it designates the lawyer, a client

of the lawyer. Whether a client-lawyer relationship also exists between the lawyer and the insurer is determined under § 14.

¶ 15 The RESTATEMENT clearly permits a lawyer to represent the insured even though the lawyer is paid by the insurer and his/her professional conduct on behalf of the insured is directed by the insurer. *See* RESTATEMENT § 134. Thus, because the insured has given the insurer control of the defense as part of the agreement for indemnity, the assigned lawyer more or less automatically becomes the attorney for the insured. But does the assigned lawyer automatically also become the attorney for the insurer in every case? As noted in the preceding paragraph, the RESTATEMENT seems to answer in the negative. Langerman goes further, arguing that even in the absence of actual conflict between the insured and insurer, there is always a great potential for it. And it is this potential, argues Langerman, that prevents the formation of an attorney-client relationship absent the express consent of the insured—the automatic client. The basic rule prohibiting conflicts reads:

> Unless all affected clients and other necessary persons consent to the representation . . . a lawyer may not represent a client if the representation would involve a conflict of interest. A conflict of interest is involved if there is a *substantial risk* that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or *by the lawyer's duties to another current client,* a former client, *or a third person.*

RESTATEMENT § 121 (emphasis added).

■■ ¶ 16 Is the risk of conflict resulting from the lawyer's duties to the insurer as a potential client or third person so substantial in every case that the lawyer cannot ever be engaged in dual representation? There can be no doubt that actual conflicts between insured and insurer are quite common and that the potential for conflict is present in every case. Conflicts may arise over the existence of coverage, the manner in which the case is to be defended, the information to be shared, the desirability of settling at a particular figure or the need to settle at all, and an array of other factors applicable to the circumstances of a particular case. This is especially true in cases involving medical malpractice claims.[1] We have recognized such tensions, holding in both *Barmat* and *Parsons* that when a conflict actually arises, and not simply when it potentially exists, the lawyer's duty is exclusively owed to the insured and not the insurer. *Barmat,* 155 Ariz. at 517, 747 P.2d at 1216; *Parsons,* 113 Ariz. at 227, 550 P.2d at 98. Because a lawyer is expressly assigned to represent the insured, the lawyer's primary obligation is to the insured, and the lawyer must exercise independent professional judgment on behalf of the insured. *See* ARIZONA RULES OF PROF'L CONDUCT (ER) 1.8.(f)(2)-(3), ARIZ. R.SUP.CT. 42. Thus, a lawyer cannot allow an insurer to interfere with the lawyer's independent professional judgment, even though, in general, the lawyer's representation of the insured is directed by the insurer. RESTATEMENT § 134(2)(a).

¶ 17 Langerman cites two opinions of the Arizona State Bar Committee on the Rules of Professional Conduct to support its argument that the Arizona view ha's always been that a lawyer assigned to represent an insured represents *only* the insured and *never* the insurer. *See* Az. State Bar Comm. on Prof'l Conduct, Formal Op. 99–08 (1999); Az. State Bar Comm. on Prof'l Conduct, Formal Op. 94–03 (1994); *see also* ER 1.7, ARIZ.R.SUP.CT. 42. Regardless of these opinions' precedential value, they do not support Langerman's interpretation. Rather, they hold only that the lawyer "does not *automatically* represent the insurer." Op. 99–08, at 3 (emphasis added). We have no quarrel with this proposi-

---

1. For instance, in the ordinary case in which liability is probable, even if somewhat questionable, it would almost always be in the interest of the insurer to make a reasonable settlement offer within policy limits. However, such a settlement might not be in the insured's interest and he or she may prefer to take a chance at trial because any settlement payment will require reporting that physician to the National Practitioner Data Bank, thus potentially affecting the physician's ability to obtain hospital privileges or malpractice insurance in the future. *See* 42 U.S.C. § 11131; *see also* 1 Geoffrey C. Hazard, Jr. & W. William Roads, THE LAW OF LAWYERING § 1.7:303 (2d ed.1990).

tion. In addition, instead of addressing a situation like the one presently before us, Opinion No. 99–08 involved an insurance carrier's attempts to use an audit procedure to force a lawyer to reveal information that was potentially disadvantageous to his client, the insured. We have, in fact, previously held that an attorney assigned to represent an insured cannot supply the insurer with information that either may be or actually is detrimental to the insured's interests. *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 448, 675 P.2d 703, 708 (1983). *Vagnozzi* and Opinion 99–08, however, are cases of *actual* conflict as they involved a real or substantial danger of harming the insured. Where a substantial danger of harming the client does not exist, there is no actual conflict of interest-only the potential of a future conflict.

¶ 18 When the potential for a future conflict between insurer and insured is great, restrictions are placed on the lawyer's ability to accept or continue representation of both. Our Rules of Professional Conduct provide:

> A lawyer shall not represent a client if the representation of that client may be *materially limited* by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation.

ER 1.7, ARIZ.R.SUP.CT. 42 (emphasis added). What constitutes a material limitation in any particular case depends, of course, on the facts of that case.

¶ 19 We agree with Langerman that the potential for conflict between insurer and insured exists in every case; but we note that the interests of insurer and insured frequently coincide. For instance, both insurer and insured often share a common interest in developing and presenting a strong defense to a claim that they believe to be unfounded as to liability, damages, or both. Usually insured and insurer have a joint interest in finding additional coverage from another carrier. Thus, by serving the insured's interests the lawyer can also serve the insurer's, and if no question arises regarding the existence and adequacy of coverage, the potential for conflict may never become substantial. In such cases, we see no reason why the lawyer cannot represent both insurer and insured; but in the unique situation in which the lawyer actually represents two clients, he must give primary allegiance to one (the insured) to whom the other (the insurer) owes a duty of providing not only protection, but of doing so fairly and in good faith. *See Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 237–38 ¶ 20, 995 P.2d 276, 279–80 ¶ 20 (2000).

¶ 20 Perhaps recognizing this, the court of appeals determined that the "majority rule"[2] was "in the absence of a conflict, the attorney has two clients, the insurer and the insured." *Langerman*, 196 Ariz. at 577 ¶ 14, 2 P.3d at 667 ¶ 14; *but see Atlanta Int'l. Ins. Co. v. Bell*, 438 Mich. 512, 475 N.W.2d 294, 297 (1991) ("the relationship between the insurer and the retained defense counsel ... [is] less than a client-attorney relationship"); *In re Rules of Professional Conduct*, 299 Mont. 321, 2 P.3d 806, 814 ¶ 38 (2000) ("We hold that under the Rules of Professional Conduct, the insured is the *sole* client of defense counsel."). We believe the court of appeals' characterization of the majority rule is too absolute. A host of potential problems are created by holding that, as a matter of law, a lawyer hired by the insurer to represent an insured always accepts the responsibilities of dual representation until a conflict actually arises—thus always automatically forming an attorney-client relationship with both the insurer and insured. There are many cases in which the potential for conflict is strong

---

2. An *amicus* brief filed in support of Paradigm's position argued that this majority rule was followed by thirty-four of the forty other states addressing the issue that we are presented with here. In response, Langerman disputes amici's representation of the holding in almost half of those thirty-four states. We find it unnecessary to cite and review every jurisdiction's treatment of the dual representation issue as we are not bound by any other state's precedent on a purely state-law matter. *See Kotterman v. Killian*, 193 Ariz. 273, 291 ¶ 68, 972 P.2d 606, 624 ¶ 68 (1999) ("while [another state's] judicial decisions may prove useful, they certainly do not control Arizona law. We alone must decide how persuasive the legal opinions of other jurisdictions will be to our holdings.").

enough to implicate ER 1.7 and RESTATE-MENT section 121 from the very beginning. Think, for example, of a claim with questionable liability against an insured covered by limits much lower than the amount of damages. The potential for conflict is quite substantial unless and until the insurer has committed itself to offering or waiving the policy limits. Thus we do not endorse the view that the lawyer automatically represents both insurer and insured until the conflict actually arises.[3]

¶ 21 In situations like the present one—in which an insurer assigns an attorney to represent the insured—the RESTATEMENT has decided against taking a firm position on whether the insurer is automatically and always a client. *Compare* RESTATEMENT § 134 cmt. f (stating insurer is not a client simply because it designates and pays the attorney to represent the insured)[4] *with* RESTATEMENT § 14 (attorney-client relationship is formed when person manifests intent that lawyer provide services and lawyer manifests consent to do so). The issue is one we have never before been specifically asked to resolve. And in the present case, with the record before us—lacking many details of the factual circumstances of the underlying malpractice claim in *Taylor v. Vanderwerf*—it would be difficult to do so. Nor do we believe it necessary to even make the attempt. Based on what we do know of the uncontroverted facts, Arizona law and the RESTATEMENT make it unnecessary to tackle the thorny issue of whether the facts of the underlying case permitted both Paradigm and Vanderwerf to be Langerman's clients.

## C. Duty to a nonclient

██ ¶ 22 The court of appeals gave several reasons for its conclusion that, in the absence of a conflict, an attorney automatically provides dual representation. *Langerman*, 196 Ariz. at 577 ¶ 14, 2 P.3d at 667 ¶ 14. The primary reason given, and the one most relevant, is that absent an attorney-client relationship, an "insurer cannot maintain a malpractice action against an attorney it hired to represent its insured," thus "immuniz[ing] that attorney's malpractice." *Id.* at 578 ¶ 16, 2 P.3d at 668 ¶ 16.[5] On this point we must respectfully disagree with the court of appeals.

██ ¶ 23 If a lawyer's liability to the insurer depends entirely on the existence of an attorney-client relationship and for some reason the insurer is not a client,[6] then the lawyer has no duty to the insurer that hired him, assigned the case to him, and pays his fees. There are many problems with that result: if that lawyer's negligence damages the insurer only, the negligent lawyer fortuitously escapes liability. Or if the lawyer's negligence injures both insurer and insured in a case in which the insured is the only client but refuses to proceed against the lawyer, the insurer is helpless and has no remedy. Such unjust results are not just

---

3. To forestall confusion among the bar, we hasten to point out that even when the insurer is not the lawyer's client, it certainly is the insured's agent to prepare and handle the defense. Thus, for instance, communications between the nonclient insurer and the lawyer would generally be entitled to the same degree of confidentiality—as long as the general requirements for privilege are met—as those between the insured client and the lawyer.

4. While we agree with this statement, we decline to interpret it to mean that an attorney-client relationship can never be formed between assigned counsel and the insurer.

5. The court gave two other reasons to support its conclusion of a dual attorney-client relationship. One was the absence of any absolute ethical prohibition against an attorney representing more than one client in a single matter. *Langer-* *man*, 196 Ariz. at 578 ¶ 16, 2 P.3d at 668 ¶ 16 (citing ER 1.7(b), ARIZ.R.SUP CT 42). The final reason given was that having one attorney representing both insurer and insured made "economic and practical sense." *Id.* We agree with the first reason. As to the other, we believe that in some cases common representation makes economic and practical sense but in others it does not. We have, of course, no way of quantifying those cases in which dual representation makes sense and those in which it does not—much depends on the strength of the potential for conflict and the nature of the issues in the case. Yet neither of these reasons, we believe, are persuasive enough to hold that there is dual representation *in every case* where an attorney is assigned by an insurer to represent the insured.

6. When, for instance, the insured does not consent to a dual relationship, the potential for conflict is great, or the conflict is real.

bad policy but unnecessary. The RESTATE-MENT holds the view that a lawyer may, in certain circumstances, owe a duty to a non-client. Specifically, RESTATEMENT section 51(3) reads, in pertinent part:

[A] lawyer owes a duty of care ... to a nonclient when and to the extent that:

(a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;

(b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and

(c) the absence of such a duty would make enforcement of those obligations to the client unlikely;

Comment g to this section advises:

[A] lawyer designated by an insurer to defend an insured owes a duty of care to the insurer with respect to matters as to which the interests of the insurer and insured are not in conflict, *whether or not the insurer is held to be a co-client of the lawyer.*

(Emphasis added). In addition, comment f to RESTATEMENT section 14 states:

Because and to the extent that the insurer is directly concerned in the matter financially, the insurer should be accorded standing to assert a claim for appropriate relief from the lawyer for financial loss proximately caused by professional negligence or other wrongful act of the lawyer.

¶ 24 Although the RESTATEMENT's position may be a relatively recent development, Arizona's courts have long recognized situations in which a professional is under a duty of care to nonclients. In *Fickett v. Superior Court,* for example, the attorney representing a guardian of an estate was accused of negligence by the ward in failing to discover that the guardian had dissipated the estate by misappropriation, conversion, and improper investing. 27 Ariz.App. 793, 794, 558 P.2d 988, 989 (1976). The attorney prevailed on his summary judgment motion in the trial court by arguing that, since there was no fraud or collusion between him and the guardian, he could not be liable for negligence to anyone other than his client, the guardian. *Id.* The court of appeals reversed, holding that one could not say, as a matter of law, that the guardian's attorney owed no duty to the ward. Instead, the court said:

[T]he better view is that the determination of whether, in a specific case, the attorney will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injuries suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Id.* at 795, 558 P.2d at 990.

¶ 25 Relying on a more recent case from the court of appeals, *Franko v. Mitchell,* 158 Ariz. 391, 762 P.2d 1345 (App.1988), Langerman argues that *Fickett* and its factors are inapplicable to the present case because there is no allegation that it was negligent in its representation of the insured, Dr. Vanderwerf. In *Franko,* the court of appeals reasoned, because "any duty owed by an attorney to a third party is derivative of the duty owed by that attorney to his client," that "at a minimum, there must be an allegation that the defendant attorney was negligent towards his client before utilizing a *Fickett*-type analysis to determine whether such liability should be extended to a third person." *Id.* at 400, 762 P.2d at 1354. Because we see no such requirement in *Fickett,* we disagree with *Franko*'s interpretation of it. We believe such a rule is not supported by precedent and is bad policy. We therefore expressly disapprove of *Franko*'s language that limits a third party's ability to bring a claim against an attorney absent an allegation of malpractice to the client.

¶ 26 We reached a result similar to *Fickett* in *Donnelly Construction Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984). In *Donnelly,* a construction contractor brought an action against the architect hired by the property owner, alleging that substantial error in the architect's prepared plans and specifications resulted in

increased construction costs, damaging the contractor—a nonclient. *Id.* at 185–86, 677 P.2d at 1293–94. We held that "design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from their negligent performance of their professional services." *Id.* at 188, 677 P.2d at 1296. If design professionals cannot escape liability to foreseeably injured third parties who, although lacking privity, are harmed by a designer's negligence, we cannot see why lawyers should not likewise be held to a similar standard. Indeed, *Donnelly* expressly disapproved of *Chalpin v. Brennan,* a case in which the court of appeals "refused 'to grant a cause of action for malpractice to an individual who is not a client or in privity with [an] attorney.' " *Id.* (quoting *Chalpin v. Brennan,* 114 Ariz. 124, 126, 559 P.2d 680, 682 (App.1976)).[7]

¶ 27 In *Napier v. Bertram* we recognized that, although the "general rule is that a professional owes no duty to a non-client unless special circumstances require otherwise," there are "special circumstances" where we have "imposed liability on a professional to the extent that a foreseeable and specific third party is injured by the professional's actions." 191 Ariz. 238, 242 ¶ 15, 954 P.2d 1389, 1393 ¶ 15 (1998). As the cases already discussed demonstrate, these circumstances are found in a myriad of contexts. *See, e.g., Lombardo v. Albu,* 199 Ariz. 97, 99–100 ¶ 10, 14 P.3d 288, 290–91 ¶ 10 (2000) (purchaser's real estate agent has duty to disclose purchaser's financial difficulties to seller); *Hamman v. County of Maricopa,* 161 Ariz. 58, 63–64, 775 P.2d 1122, 1127–28 (1989) (psychiatrist has duty to exercise reasonable care to protect foreseeable victim of patient); *Mur–Ray Mgmt. Corp. v. Founders Title Co.,* 169 Ariz. 417, 422–23, 819 P.2d 1003, 1008–09 (App.1991) (imposing duty of reasonable care for escrow agent's representations to third persons). The "common thread [that] exists between" such cases is that "there was a foreseeable risk of harm to a foreseeable non-client whose protection de-

pended on the actor's conduct." *Napier,* 191 Ariz. at 242, 954 P.2d at 1393.

¶ 28 But Langerman argues that Paradigm need not have depended on it, as every insurer has both the freedom and financial ability to hire separate counsel to protect the insurer's own interests. This, of course, must be done in cases in which a conflict exists or is imminent, but we certainly need not impose such an expense on every insurer in every case just to provide the insurer with protection against malpractice by the lawyer it has chosen to handle the defense. When the interests of insurer and insured coincide, as they often do, it makes neither economic nor practical sense for an insurer to hire another attorney to monitor the actions and decisions of the attorney assigned to an insured. More important, we believe that a special relationship exists between the insurer and the counsel it assigns to represent its insured. The insurer is "in some way dependent upon" the lawyer it hires on behalf of its insureds. *Napier,* 191 Ariz. at 242, 954 P.2d at 1392. For instance, the insurer depends on the lawyer to represent the insured zealously so as to honor its contractual agreement to provide the defense when liability allegations are leveled at the insured. In addition, the insurer depends on the lawyer to thwart claims of liability and, in the event liability is found, to minimize the damages it must pay. Thus, the lawyer's duties to the insured are often discharged for the full or partial benefit of the nonclient. *See Fickett,* 27 Ariz.App. at 795, 558 P.2d at 990. We reject Langerman's attempt to distinguish the present case from our cases that recognize that a professional has a duty to third parties who are foreseeably injured by the lawyer's negligent actions.

## CONCLUSION

¶ 29 We reiterate that an express agreement is not a prerequisite to the formation of an attorney-client relationship. We also determine that, based on a long line of prece-

---

7. The requirement of privity before duty arises has been contracting since *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916). *See, e.g., Mur–Ray Mgmt. Corp. v. Founders Title Co.,* 169 Ariz. 417, 423, 819 P.2d 1003, 1009

(App.1991) ("This duty existed notwithstanding a lack of privity between the parties and the absence of any duty to respond to the contractors' inquiries.").

dent, when an insurer assigns an attorney to represent an insured, the lawyer has a duty to the insurer arising from the understanding that the lawyer's services are ordinarily intended to benefit both insurer and insured when their interests coincide. This duty exists even if the insurer is a nonclient. We hold again today that a lawyer has a duty, and therefore may be liable for negligent breach, to a nonclient under the conditions set forth in previous case law and the RESTATEMENT. Summary judgment on lack of duty was therefore improper in the present case.

 ¶ 30 The record does not allow us, however, to determine whether, as a matter of law, Langerman actually breached its duty to Paradigm in this case. Thus, our holding does not determine whether the applicable standard of conduct would have required Langerman to investigate the existence of a different primary insurer or advise Paradigm to tender the defense to that other insurer. Although we have decided that an attorney-client relationship is not a prerequisite to Paradigm's maintaining a tort action against Langerman for its alleged negligence, whether Langerman actually breached its duty to Paradigm or caused damage is left for the trial court to decide on remand. Under the circumstances of this case, suffice it to say that absent any conflict or significant risk of conflict that compelled Langerman to act as it did, Langerman had a duty to Paradigm— regardless of whether Paradigm was a client.

¶ 31 For the foregoing reasons, we vacate the court of appeals' opinion in part, reverse the trial court in part, and remand to the trial court for further proceedings consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice and RUTH V. McGREGOR, Justice.