36 P.3d 761

David A. KREMSER; Bernice E. Kremser; Michael P. Kremser; Stanley A. Kremser; Holly M. Kremser; and Elk Meadows Investments, L.L.C., a Colorado Limited Liability Company, Plaintiffs–Appellants,

v.

QUARLES & BRADY, L.L.P., a Registered Limited Liability Partnership; P. Robert Moya and Sara D. Moya, husband and wife; Robert S. Bornhoft and Brandie M. Bornhoft, husband and wife, Defendants–Appellees.

No. 1 CA–CV 00–0535.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 20, 2001.

As Corrected Feb. 14, 2002.

---

**414**

Dalton Gotto Samson & Kilgard, P.L.C., by R. Douglas Dalton, Laurie B. Ashton, Christopher Graver, Phoenix, Attorneys for Plaintiffs–Appellants.

Mariscal Weeks McIntyre & Friedlander, P.A., by Gary L. Birnbaum, Andrew L. Pringle, Allison S. Weinstock, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

WEISBERG, Judge.

¶ 1 David A. Kremser ("Mr.Kremser"), Bernice E. Kremser, Michael P. Kremser, Stanley A. Kremser, Holly M. Kremser, and Elk Meadows Investments, L.L.C., a Colorado limited liability company (collectively, "appellants"), appeal the trial court's dismissal of their complaint against Quarles & Brady, L.L.P., a registered limited liability partnership, and two of Quarles & Brady's attorneys, P. Robert Moya and Robert S. Bornhoft and their spouses (collectively, "appellees"). Quarles & Brady had represented Unison Healthcare Corporation ("Unison") in a series of transactions between Unison and appellants, in which appellants were to acquire certain security interests in Unison and its subsidiaries. Unison later reorganized under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101–74 ("Chapter 11"), and because several of those security interests had not been timely perfected, avoided the payment of part of its obligations. Appellants then sued their own attorneys and appellees, alleging various theories of negligence and malpractice resulting in the failure to timely perfect the security interests. The trial court dismissed the complaint against appellees. For the following reasons, we reverse the trial court's decision and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In reviewing a motion to dismiss for failure to state a claim, we accept the factual allegations of the complaint as true, and accord the plaintiff the benefit of all reasonable inferences from the complaint. *Linder v. Brown & Herrick*, 189 Ariz. 398, 402, 943 P.2d 758, 762 (App.1997); *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 424, 909 P.2d 486, 491 (App.1995).

¶ 3 In 1996, Mr. Kremser and the other appellants agreed to sell Signature Health Care Corporation and some of its affiliates to Unison in exchange for cash, Unison stock, and promissory notes dated October 31, 1996. Mr. Kremser had powers of attorney for the other appellants regarding the sale. He re-

tained the firm of Sherman & Howard, L.L.C., to represent appellants in the transaction. Unison was represented by Quarles & Brady, through attorneys Mr. Moya and Mr. Bornhoft.

¶ 4 The sale agreement and the October 31, 1996 promissory notes provided that payments be made on October 31, 1997, and October 31, 1998. Also, an "equity adjustment amount," to be determined at a later time, was due several months after the sale transaction closed. In March 1997, Unison and Mr. Kremser agreed upon the equity adjustment amount, but because Unison could not then afford to pay that amount, appellants agreed to accept a combination of additional promissory notes in the total amount of $1,554,693, plus interest (the "Equity Adjustment Notes"), and additional Unison stock. The Equity Adjustment Notes were to be secured by collateral pursuant to a "Loan and Security Agreement" dated April 21, 1997. The Loan and Security Agreement contained a provision stating that "[t]he Borrower agrees that . . ., at its expense, it shall promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable or that the Lender may request to perfect and protect the assignments and security interests. . . ."

¶ 5 Mr. Kremser was appointed acting CEO and CFO of Unison, as well as Chairman of Unison's Executive Committee. Then, also in April 1997, Elk Meadows agreed to lend Unison $1,475,000 to use as working capital (the "April Loan"). The April Loan was to be secured by accounts receivable and stock of certain Unison subsidiaries, as set forth in the Loan and Security Agreement. The collateral listed in the Loan and Security Agreement was intended to secure the April Loan, the Equity Adjustment Notes, and the original October 31, 1996 promissory notes.

¶ 6 Quarles & Brady, acting as counsel for Unison, drafted the Loan and Security Agreement and the UCC–1 financing statements necessary to perfect the security interests of appellants. However, because the financing statements were defective and/or filed late, the security interests were not perfected as intended. Quarles & Brady attempted to correct the defects by filing amended UCC–1 financing statements in July and August 1997.

¶ 7 Quarles & Brady also drafted a Stock Pledge Agreement dated April 21, 1997, which pledged the stock of numerous Unison affiliates as collateral to secure the April Loan. However, Quarles & Brady did not file financing statements for the stock collateral, and failed to deliver the subject stock certificates for some of the affiliates until May 1997, and for others until June 1997.

¶ 8 In September 1997, Elk Meadows entered into a Modification Agreement with Unison. The agreement provided for a new $500,000 loan from Elk Meadows to Unison (the "September Loan"). Collateral for the April Loan was to serve as collateral for the September Loan. No new financing statements were filed to perfect the liens related to the September Loans.

¶ 9 In April and May 1998, appellants and Unison entered into a series of tolling agreements to preserve any avoidance claims by Unison or its creditors against appellants should Unison file under Chapter 11, while allowing the parties to try to resolve their claims before Unison filed a bankruptcy petition. Nevertheless, in May 1998, Unison and its affiliates filed voluntary Chapter 11 reorganization petitions. Two months later, Unison and its affiliates filed a complaint to avoid the improperly perfected security interests and to set aside the transfers of collateral as preferential transfers pursuant to 11 U.S.C. §§ 544 and 547. The bankruptcy court eventually confirmed a plan of reorganization that yielded appellants $541,000 in cash and $1,353,704 in secured notes, but discharged the remaining claims in the amount of $3,475,247 plus interest.

¶ 10 In July 1999, appellants sued both their own attorneys and appellees, alleging various theories of negligence and malpractice, and seeking recovery of damages including the sums discharged in Unison's bankruptcy proceedings. The complaint specifically alleged that "[t]he perfection by Quarles & Brady of the security interests in the AR Collateral and the Stock Collateral,

pursuant to the Loan and Security Agreement and documents related thereto, was intended for the benefit of [appellants]." The complaint further alleged that Quarles & Brady had a duty to its client, Unison, to document and perfect the security interests pursuant to the Loan and Security Agreement, and that Quarles & Brady undertook that duty "for the benefit of [appellants]."

¶ 11 The complaint also alleged that Quarles & Brady had a duty to appellants to competently perfect the security interests, that it breached that duty by failing to properly and promptly file the UCC–1 financing statements, and that if Quarles & Brady had properly perfected the security interests, appellants would not have been damaged by the resulting avoidance of their claims in the Chapter 11 reorganization.

¶ 12 The trial court granted appellees' motion to dismiss the complaint for failure to state a claim. The court distinguished the instant case from *Fickett v. Superior Court,* 27 Ariz.App. 793, 558 P.2d 988 (1976), which held that attorneys in certain circumstances may owe a duty of reasonable care to nonclients, on the grounds that Mr. Kremser was a sophisticated person engaged in a complex commercial transaction, and was represented by his own attorneys. The court also concluded that Quarles & Brady would not "naturally think that [appellants were] relying on them to perfect the security interest that would normally be perfected by [appellants'] counsel." Finally, the court concluded that Quarles & Brady did not gratuitously undertake a duty to properly perfect the security interests because appellants were represented by their own attorneys and had no attorney-client relationship with Quarles & Brady. Thus, the court concluded, appellants had no right to rely on Quarles & Brady regarding the perfection of the security interests. We have jurisdiction over appellants' timely appeal, pursuant to A.R.S. § 12–2101(B).

## DISCUSSION

■ ¶ 13 We will uphold the trial court's dismissal of the complaint "only if the plaintiff is not entitled to relief under any facts susceptible of proof under the claims stated."

*Linder,* 189 Ariz. at 402, 943 P.2d at 762 (citations and internal quotation marks omitted).

¶ 14 Appellants contend that Quarles & Brady either owed a common law duty of due care to them or that Quarles & Brady gratuitously assumed a duty to non-negligently prepare and file the documents that would have perfected their security interests. Quarles & Brady contends that, because appellants were not clients, it had no duty, and cannot have assumed a duty, to "represent" them in any aspect of the transaction, and therefore cannot be liable for any failure to adequately protect appellants' interests.

¶ 15 Our supreme court recently analyzed a long line of Arizona cases that have held attorneys subject to a duty of care to nonclients. *Paradigm Ins. Co. v. Langerman Law Offices,* 200 Ariz. 146, 153–54, ¶¶ 24–27, 24 P.3d 593, 600–01 (2001). The court held that "a lawyer has a duty, and therefore may be liable for negligent breach, to a nonclient under the conditions set forth in previous case law and the Restatement." *Id.* at 154, ¶ 29, 24 P.3d at 601 (referring to Restatement (Third) of The Law Governing Lawyers, § 51, and holding that an attorney hired by an insurer to represent an insured also owes a duty of care to the insurer when the interests of the insurer and the insured coincide); *see also Napier v. Bertram,* 191 Ariz. 238, 242, ¶ 15, 954 P.2d 1389, 1393 (1998) ("special circumstances" exist allowing imposition of liability on a professional "to the extent that a foreseeable and specific third party is injured by the professional's actions").

¶ 16 Appellees assert, however, that they cannot be held liable to appellants in this case because appellants' own attorneys should have examined and corrected the defective financing statements, and should have ensured their timely filing. But even assuming the accuracy of this assertion, the negligence of appellants' attorneys is important only in a comparative negligence context; it cannot negate the existence of a duty by appellees, as attorneys, to nonclients, even where those nonclients were represented by

their own attorneys in the subject transaction.

¶ 17 Appellees more pointedly argue, however, that *Wetherill v. Basham*, 197 Ariz. 198, 3 P.3d 1118 (App.2000), requires the holding that an attorney owes no duty to a nonclient whose interests are "directly adverse" to the interests of the attorney's client. Appellees contend that Unison's interests were directly adverse to appellants' interests in the subject loan transaction, and, therefore, they could not owe a duty of due care to appellants.

¶ 18 *Wetherill* involved a claim by a remainder beneficiary who had been cut out of a trust via an amendment drafted by an attorney at his client's direction. This court held that the attorney owed no duty to the nonclient, whose interests in the trust were adverse to his client's interests. *Id.* at 209, 3 P.3d at 1129. But, unlike *Wetherill*, appellants' and Unison's interests regarding the perfection of the security interests were not in conflict because the Loan and Security Agreement agreed to by Unison required that it prepare and file the security documents as requested by appellants. *Wetherill*, therefore, does not enhance appellees' argument.

■ ¶ 19 Notwithstanding, appellees suggest that Unison had no real interest in ensuring that the documents were properly prepared and timely filed, while appellants had a real and adverse interest in ensuring that the security interests were perfected. We need not, however, consider the ethical issues raised by the implication that an attorney may, in the name of zealously representing a client, improperly prepare and belatedly file security documents so that the client can later avoid a bargained-for security interest. It is sufficient to note that the Loan and Security Agreement specifically required Unison to "take all ... action[] that may be necessary ... to perfect and protect the assignments and security interests...."[1] Thus, the complaint supports the inference that Unison had an obligation to ensure that

the security interests were *properly perfected* and that its obligation coincided with the interests of appellants. Accordingly, there is no resulting conflict in imposing a duty on Quarles & Brady for the benefit of these nonclients. Next, having found a common law duty to exist, we consider the application of Restatement section 51 to the facts alleged in this case.

¶ 20 Our supreme court has recently held that The Restatement (Third) of The Law Governing Lawyers (the "Restatement") is in accord with Arizona case law, and applied Restatement section 51 in determining the duty owed by an attorney to a nonclient. *See Paradigm*, 200 Ariz. at 152–55, ¶¶ 23–29, 24 P.3d at 599–602. Restatement section 51 provides as follows:

[A] lawyer owes a duty to use care ...

(2) to a nonclient when and to the extent that:

(a) the lawyer or (with the lawyer's acquiescence) the lawyer's client invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and

(b) the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection;

(3) to a nonclient when and to the extent that:

(a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;

(b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and

(c) the absence of such a duty would make enforcement of those obligations to the client unlikely[.]

Restatement (Third) of The Law Governing Lawyers, § 51(2), (3) (1998).

■ ¶ 21 We find that the complaint alleged facts that meet the requirements set forth in Restatement section 51(2). First, the complaint alleged that, pursuant to the

---

1. The Loan and Security Agreement was attached to the complaint. Therefore, the trial court was required to consider it when ruling on a motion to dismiss. *See, e.g., Stein v. Royal*

*Bank of Canada*, 239 F.3d 389, 392 (1st Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Calif. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir.2000).

Loan and Security Agreement, and on behalf of Unison, Quarles & Brady undertook to perfect the security interests for appellants' benefit. A reasonable inference from this allegation is that Quarles & Brady and Unison invited appellants to rely on Quarles & Brady's "provision of ... legal services," i.e., its attempts to perfect the security interests, because (1) the Loan and Security Agreement provided that the borrower (Unison) would draft and file the documents to perfect the security interests, and (2) Quarles & Brady did in fact draft and file the UCC–1 financing statements, allegedly without first submitting them to appellants' attorneys for approval. Second, the complaint alleged that appellants relied on Quarles & Brady to perform the services non-negligently. Finally, appellants are "not ... too remote from the lawyer to be entitled to protection," because they were parties to the loan transaction for which the security documents were prepared, and they were obvious beneficiaries of Quarles & Brady's services in attempting to perfect the security interests.

¶ 22 Importantly, comment e specifically provides that Restatement section 51(2) applies

> [w]hen a nonclient is invited to rely on a lawyer's legal services.... For example, if the seller's lawyer at a real-estate closing offers to record the deed for the buyer, the lawyer is subject to liability to the buyer for negligence in doing so, even if the buyer did not thereby become a client of the lawyer.

Restatement § 51(2) cmt. e. This hypothetical situation is directly analogous to the facts alleged here: that the debtor's attorney agreed to prepare and file security documents for the creditor's benefit.

¶ 23 We therefore conclude that the complaint states a claim for relief. If the facts alleged in the complaint are found to be true, Quarles & Brady owed a duty of care to

appellants in preparing and filing the security documents. If Quarles & Brady breached its duty of care in preparing and filing the documents, it may be liable to appellants for such breach.[2]

¶ 24 The complaint also alleged facts that would satisfy the elements set forth in Restatement section 51(3). Although comment f suggests that subsection (3) was drafted primarily to allow the enforcement of a testator's intent by a beneficiary or estate representative, it applies to other situations as well. *Compare* Restatement § 51(3) cmt. f (illustrations dealing with will-related issues only) *with Paradigm,* 200 Ariz. at 152–54, ¶¶ 22–28, 24 P.3d at 599–601 (applying Restatement section 51(3) to find that insured's attorney, hired by insurer, owes duty of care to insurer even absent attorney-client relationship). By analogy to *Paradigm,* we find section 51(3) applicable here as well.

¶ 25 A reasonable inference from the complaint is that Quarles & Brady knew that a primary objective of perfecting the security interests was to benefit appellants as the creditors. Also, properly perfecting the security interests would not have impaired the lawyer's performance of obligations to the client because the client was required, under the Loan and Security Agreement, to draft and file the security documents if requested by appellants.

¶ 26 Additionally, it is reasonable to conclude that the absence of a duty to the nonclient creditor would make enforcement of the subject obligation to the client unlikely in the circumstances presented here: the client/debtor would have little or no interest in pursuing a malpractice action against its own attorney because such an action would benefit only the creditor, rather than the debtor, whose obligation to the lender has already been discharged in bankruptcy. Thus, the complaint states a claim for relief pursuant to Restatement section 51(3).

---

**2.** Appellees argued at oral argument that under limited circumstances an attorney may be liable to a nonclient for negligence in performing some "ministerial" actions, but asserted that they should not be held liable here because the conduct involved in perfecting the security instruments involved essential functions of lawyering. However, a plain reading of Restatement section

51(2) makes it clear that it does not apply only to "ministerial" acts. Rather, an attorney may owe a duty of care to a nonclient based on the lawyer's "opinion or provision of *other legal services."* Restatement § 51(2)(a) (emphasis added). Therefore, we reject appellees' argument that they can be held liable only for a failure to provide nonlegal ministerial services.

¶ 27 Notwithstanding, appellees ask us to draw a bright line rule that, where each of two sophisticated parties is represented by its own attorney, under no circumstances may either of those attorneys be held liable to the other party for negligent acts, omissions, or representations. While that may normally be the case, and certainly is in most aspects of a transaction where an attorney acts solely in the interest of his or her own client vis-a-vis the other party, that is neither the situation contemplated by the Restatement nor the situation alleged here. The gist of this claim is that there were legal services offered and provided by appellees that were intended to benefit not only their client but all the parties to the transaction. In any event, rather than being amenable to a bright-line rule, the application of the Restatement depends upon the facts of the relationships and services offered, and must be considered on a case-by-case basis. As those facts are developed here, this may prove to be a situation in which such a duty did not exist, but the facts as pled suggest otherwise.

¶ 28 We emphasize the limitations of our ruling. Appellees have argued that its effect will be to open the floodgates of litigation, allowing a party to a transaction to sue an opposing attorney wherever advice or service provided to the client works to the other party's detriment. Alternatively, appellees argue that the attorney-client relationship will be compromised in commercial settings because attorneys will be compelled to draft agreements in a nonpartisan manner. But such warnings fail to recognize the diversity of situations in which an attorney may be asked to act. For example, negotiating a contract provision for the benefit of one's client, with a resulting detriment to the nonclient, is far different from the assumption of a task on behalf of all the parties to the transaction as alleged here. It is only under these rare circumstances that Restatement section 51 will apply. In most adversarial proceedings, where no duty is expressly assumed or no shared benefit can be found, attorneys remain free to zealously represent their clients' interests without the risk of liability to the nonclient.[3]

---

3. Given the resolution of appellees' duty on common law and Restatement grounds, it is not

## CONCLUSION

¶ 29 For the foregoing reasons, we reverse the trial court's dismissal of the complaint, and remand for further proceedings consistent with this opinion.

CONCURRING: JAMES B. SULT, Presiding Judge, CECIL B. PATTERSON, JR., Judge.

necessary to consider appellants' gratuitous assumption of duty argument.