2003 UT 39

Richard K. SPRATLEY and Brett G. Pearce, Plaintiffs and Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Michael Arnold, Craig Kingman, Scott D. Kotter, and Harold E. Nixon, Defendants and Appellees.

Nos. 20011002, 20011003.

Supreme Court of Utah.

Sept. 23, 2003.

Rehearing Denied Sept. 19, 2003.

Richard K. Spratley, Brett G. Pearce, L. Rich Humpherys, Karra J. Porter, Salt Lake City, for plaintiffs.

Alan L. Sullivan, Scott C. Sandberg, Salt Lake City, for defendants.

## AMENDED OPINION

WILKINS, Justice:

¶ 1 We granted this interlocutory appeal by plaintiffs Richard Spratley and Brett Pearce to review the trial court's December 7, 2001 order requiring Spratley and Pearce, attorneys who formerly represented State Farm Mutual Automobile Insurance Company ("State Farm") and its insureds, to "refrain from disclosing" certain communications and facts relating to that representation, to return to State Farm documents that Spratley and Pearce retained from the representation, and disqualifying Spratley and Pearce's chosen legal counsel, L. Rich Humpherys, and his law firm, Christensen & Jensen, from further representation of Spratley and Pearce. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

## FACTUAL BACKGROUND

¶ 2 The complex relationship between the parties to this case spans a number of years. Spratley began his relationship with State Farm in 1987, working as State Farm's sole in-house lawyer in Salt Lake City before transferring temporarily to State Farm's headquarters in Illinois. Beginning in the early 1990s, Spratley and Pearce worked together as Claims Litigation Counsel (CLC)

for State Farm in the Salt Lake City CLC office. In this capacity Spratley and Pearce represented both State Farm and its insureds. During that representation, Spratley and Pearce allege that State Farm required them to violate many of their ethical duties as attorneys and punished them when they did not. Concluding that they could not meet their ethical duties as attorneys and comply with allegedly unlawful and unethical demands placed on them by State Farm, Spratley and Pearce resigned their employment with State Farm in June 2000. Upon their departure, Spratley and Pearce retained copies of many allegedly confidential documents and materials, some of which State Farm contends were improperly appended to the complaint.

## PROCEDURAL BACKGROUND

¶ 3 Spratley and Pearce ultimately sued State Farm for (1) misrepresentation and nondisclosure; (2) tortious interference with business relations; (3) retaliation and termination in violation of public policy; (4) breach of the covenant of good faith and fair dealing; (5) breach of the employment contract; (6) wrongful discharge and employment termination; and (7) intentional infliction of emotional distress. The trial court's later dismissal of the second and sixth causes of action is not challenged on appeal. As noted above, the complaint contained appendices, some of which State Farm argues were confidential documents. Pursuant to a separate trial court order, affidavits subsequently submitted by Spratley and Pearce were filed under seal, as were the briefs to this court.

¶ 4 At all times during the prosecution of Spratley and Pearce's claims, they have been represented by attorney L. Rich Humpherys and his firm, Christensen & Jensen. Numerous other litigants have employed Humpherys and his firm for representation against State Farm in their separate cases.

¶ 5 Fearing further disclosure of what it viewed as confidential communications and information, State Farm filed a motion for a preliminary injunction and protective order concurrent with a separate motion to disqualify Humpherys and his firm from representing Spratley and Pearce. The trial court's response to those motions is the subject of this appeal.

¶ 6 After briefing and oral argument by the parties, the trial court entered an order [1] requiring Spratley and Pearce to:

(1) Refrain from disclosing (in this litigation or otherwise) confidential communications and information exchanged between Spratley or Pearce on one hand, and State Farm and/or its insureds on the other hand, relating to the provision of legal services by Spratley, Pearce or other lawyers for State Farm, or made for the purpose of facilitating such legal services;

(2) Refrain from disclosing any facts relating to Spratley or Pearce's representation of State Farm's insureds, absent express consent to disclosure by the insureds; and

(3) Return to State Farm all confidential documents[,] materials, and information that Spratley and Pearce created, maintained, or acquired as part of their employment with State Farm, and that are currently in their possession.

¶ 7 Finding that Spratley and Pearce had divulged confidential information to Humpherys and his firm and that the disclosure would taint further proceedings in the case, the court also granted State Farm's motion to disqualify. Spratley, Pearce, and Humpherys all filed petitions for interlocutory review, which were ultimately granted by this court along with a stay of certain portions of the trial court's order.

## STANDARD OF REVIEW

¶ 8 Both the trial court's grant of a protective order under Rule 26 of the Utah Rules of Civil Procedure and the order of disqualification are reviewed for an abuse of discretion. *In re Discipline of Pendleton,* 2000 UT 77, ¶ 38, 11 P.3d 284 (protective order); *Houghton v. Dep't of Health,* 962

---

1. The trial court's order does not appear to comply with the requirements of Rule 65A(d) and (e) of the Utah Rules of Civil Procedure for orders granting preliminary injunctions. Accordingly, we will treat the order as a protective order.

P.2d 58, 61 (Utah 1998) (disqualification). This court, however, has a special interest in the administration of the Rules of Professional Conduct and the discretion granted to the trial court in matters of disqualification is quite limited when there are no factual disputes. *Houghton,* 962 P.2d at 61.

## ANALYSIS

¶ 9 Our treatment of the trial court's order hinges, in large measure, on the nature of Spratley and Pearce's duties to their former clients, State Farm and its insureds. If the order merely restates Spratley and Pearce's existing duties toward those clients, it is readily sustainable. If, on the other hand, the order prohibits disclosures by Spratley and Pearce that would not otherwise violate their ethical duties as attorneys, it represents an abuse of the trial court's discretion. Accordingly, the exposition of Spratley and Pearce's ethical duties is an appropriate starting point for our analysis.

## I. SPRATLEY AND PEARCE'S DUTIES OF CONFIDENTIALITY

### A. Existence of Attorney–Client Relationship

■ ¶ 10 The duties of confidentiality that control our resolution of the instant case depend upon an attorney-client relationship between Spratley and Pearce and State Farm. Of additional concern to this court are the duties that Spratley and Pearce may have toward State Farm's insureds, whom Spratley and Pearce were hired to defend. Our holding today recognizes that attorneys like Spratley and Pearce primarily represent the insureds they are hired to defend, but may also have an attorney-client relationship giving rise to duties of confidentiality with the insurance company which hires them.

¶ 11 In *Paradigm Insurance Co. v. Langerman Law Offices,* 200 Ariz. 146, 24 P.3d 593 (2001), the Arizona Supreme Court discussed the tripartite relationship between counsel, insureds, and insurers and followed the majority rule, concluding that in cases where "no question arises regarding the existence and adequacy of coverage, ... we see no reason why the lawyer cannot represent both insurer and insured." *Id.* at 598. This position merely recognizes the fact that the insurer has an interest in the litigation and a sufficiently strong relationship with the attorney to give rise to the duties that accompany that relationship. Recognizing the relationship is in the best interests of the insurer. This is neatly illustrated by the *Paradigm* case in which Paradigm was sued for non-payment of fees by a lawyer it hired to represent one of its insureds. Paradigm, arguing that the lawyer was negligent in representing its interests, counterclaimed for damages it incurred when it was forced to pay a claim with its own funds when another payment source existed of which the attorney should have been aware. *Id.* at 594–95. Paradigm, which had a significant stake in the litigation, rightly sought recompense for the failure of counsel to protect its interests. Recognizing an attorney-client relationship gives the insurer recourse against a negligent attorney who has caused the insurer to pay more than it otherwise might have on a claim. We follow Arizona in adopting the "dual-client" paradigm because it best protects all parties involved. Notwithstanding the propriety of this test, we recognize the potential for conflict that exists in this and any system for handling the tripartite relationship in insurance defense cases.

■ ¶ 12 We find the Arizona court's resolution of the potential conflicts of interest appropriate to address the problem. "[I]n the unique situation in which the lawyer actually represents two clients, he must give primary allegiance to one (the insured) to whom the other (the insurer) owes a duty of providing not only protection, but of doing so fairly and in good faith." *Id.* (citing *Zilisch v. State Farm Mut. Auto. Ins. Co.,* 196 Ariz. 234, 995 P.2d 276, 279–80 (2000)). Thus, where no actual conflict exists or is foreseeable, an attorney will ordinarily represent both the interests of the insured and the insurer. However, where actual conflict exists or is likely to arise, the attorney's allegiance is to the insured because of an insurer's duty to provide a defense in good faith.

¶ 13 Spratley and Pearce represented State Farm's insureds for many years. They undoubtedly participated in many cases

where State Farm was a dual client. Likewise, as Spratley and Pearce acknowledge in their complaint, they provided legal services for both State Farm directly and for its insureds. Thus, they owe an attorney's duties of confidentiality to State Farm and its insureds in connection with that long history of representation.

### B. Duty of Confidentiality to Former Client

¶ 14 Rule 1.9 of the Utah Rules of Professional Conduct prohibits an attorney from using information relating to his prior representation of a client "to the disadvantage of the former client." Utah R. Prof'l Conduct 1.9(b). Exceptions exist to this rule for circumstances allowed in Rule 1.6 or when the information becomes "generally known." *Id.* Because the information at issue in this case is not generally known,[2] the exceptions in Rule 1.6 determine whether the disclosures were violations of Spratley and Pearce's duties of confidentiality toward State Farm and its insureds.

¶ 15 Of the exceptions found in Rule 1.6, only one has any potential application to the facts of this case. The applicable exception allows disclosure "to the extent the lawyer reasonably believes necessary . . . [such as] . . . [t]o establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client." Utah R. Prof'l Conduct 1.6(b)(3). Thus, if Spratley and Pearce's suit represents a "claim" within the meaning of Rule 1.6, they may make disclosures if they are reasonably necessary to that claim.

¶ 16 The question of what matters qualify as claims under Rule 1.6 has not been answered by this court and has been only lightly treated by other authorities. The ABA

Model Rules of Professional Conduct's comparable rule, now found therein at Rule 1.6(b)(3), is explained as follows:

> With regard to paragraph (b)[(3)], [the old rule] provided that a lawyer may reveal "[c]onfidences or secrets necessary to establish or collect his fee. . . ." Paragraph (b)[(3)] *enlarges* the exception to include disclosure of information relating to claims by the lawyer other than for the lawyer's fee; for example, recovery of property from the client.

ABA Annotated Model Rules of Prof'l Conduct 68 (5th ed.2003) (emphasis added). This language clearly indicates that the rule was designed as an expansion beyond the fee disputes and defensive matters that traditionally allowed disclosure of client confidences. The ABA confirmed this intention in a Formal Ethics Opinion, which found the Model Rules did not prohibit the use of confidential information in a suit brought by former in-house counsel. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01–424. A few other authorities have approved of an expansion of the scope of the "claim or defense" exception in cases involving wrongful discharge claims by former in-house counsel.

¶ 17 In a formal ethics opinion of its own, the Oregon State Bar ruled that the "claim or defense" exception to Rule 1.6 *plainly* permits "disclosure to establish a wrongful discharge claim." Oregon State Bar Legal Ethics Comm., Formal Op.1994–136 at 3. The plain language of our rule also supports such an interpretation, and representative cases from other jurisdictions illustrate that the policy embodied in Rule 1.6 is in harmony with that interpretation. *Burkhart v. Semitool, Inc.*, 300 Mont. 480, 5 P.3d 1031 (2000);

---

**2.** Spratley and Pearce argue that State Farm waived its privilege for the communications at issue in this case. Part of that argument is that the information became known at the trial court's December 3, 2001 open hearing where some of those communications were discussed. A review of the transcript of that hearing reveals that the discussion of those communications was general in nature and insufficient to render the information either "generally known" or to waive privilege. Utah R. Evid. 507(a) (noting waiver occurs when disclosing a "significant part

of the matter"). Additionally, the duties of confidentiality found in the Rules of Professional Conduct are not coextensive with the rules of privilege found in the Rules of Evidence. Utah R. Prof'l Conduct 1.6, cmt (noting that confidentiality is protected by privilege in the law of evidence, but by "the rule of confidentiality . . . in professional ethics"). Thus, privilege might be waived allowing compelled disclosure by an attorney while the duty of confidentiality is still in full force.

*Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852 (Tenn.2002).

¶ 18 In both *Crews* and *Burkhart*, the respective courts relied, at least in part, on the "claim or defense" exception to Rule 1.6 to justify the disclosure of confidential client information in wrongful discharge suits. 5 P.3d at 1040–42; 78 S.W.3d at 863–64. In *Crews*, the court noted that "[t]he very purpose of recognizing an employee's action for retaliatory discharge in violation of public policy is to encourage the employee to protect the public interest," 78 S.W.3d at 860, and concluded that "the 'public interest is better served [when] in-house counsel's resolve to comply with ethical ... duties is strengthened by providing judicial recourse when an employer's demands are in direct and unequivocal conflict with those duties.' " *Id.* at 862 (quoting *GTE Prods. Corp. v. Stewart*, 421 Mass. 22, 653 N.E.2d 161, 166 (1995)). *Burkhart* relied on language from a related federal case in reaching the same conclusion as the *Crews* case: " '[a] lawyer ... does not forfeit his rights simply because to prove them he must utilize confidential information. Nor does the client gain the right to cheat the lawyer by imparting confidences to him.' " 5 P.3d at 1041 (quoting *Doe v. A Corp.*, 709 F.2d 1043, 1050 (5th Cir. 1983)).

¶ 19 Other courts have prevented suits by former in-house counsel where no rule comparable to our Rule 1.6 existed. The case which best embodies the line of reasoning that would prevent such suits is *Balla v. Gambro, Inc.*, 145 Ill.2d 492, 164 Ill.Dec. 892, 584 N.E.2d 104 (1991). In that case, the defendant sold dialysis machines. It received a shipment of machines that failed to meet FDA requirements, which in-house counsel advised the company not to sell.

The attorney later learned of the machines' impending sale and renewed his objections, threatening to disclose the sale to the FDA. After being terminated for his threatened disclosure, counsel notified the FDA and sued Gambro for retaliatory discharge.

¶ 20 Refusing to allow suit, the court spent much of its opinion discussing the need for trust and candid discussion in the attorney-client relationship. 164 Ill.Dec. 892, 584 N.E.2d at 108–11. The court opined that allowing former in-house counsel to sue an employer for employment related claims would cause the employer-client to be hesitant to turn to counsel for advice. *Id.* 164 Ill.Dec. 892, 584 N.E.2d at 109. However, the dissent argued, inter alia, that the refusal to allow such suits inappropriately placed the cost of an employer's wrongful conduct on the attorney who has chosen to obey strong ethical rules governing his conduct. *Id.* 164 Ill.Dec. 892, 584 N.E.2d at 113–15. Thus, the dissent's argument echoes the concerns raised in *Crews* and *Burkhart* that forbidding suit, as a practical matter, encourages unethical conduct. Despite the countervailing considerations outlined in the opinion of the court in *Balla*, the plain language of Rule 1.6 and the policy considerations outlined in other cases weigh in favor of allowing disclosure, in a limited fashion, of confidential client information in a suit by former in-house counsel for wrongful discharge.[3]

¶ 21 While adopting a literal interpretation of Rule 1.6 that permits revelations of confidential client information, we are careful to note that both former in-house counsel and trial courts must exercise great care in disclosing confidences. *See e.g., Burkhart*, 5 P.3d at 1041–42 (suggesting lawyer make all practicable efforts to limit disclosure, including protective orders); *Crews*, 78 S.W.3d at

---

**3.** While we are not called upon to decide the application of the privilege rules to specific communications, we note that our interpretation of Rule 1.6(b)(3) is in harmony with Rule 504(d)(3) of the Utah Rules of Evidence, which exempts from privilege "communication[s] relevant to an issue of breach of duty ... by the client to the lawyer." *See* Utah R. Evid. 504 advisory committee's note (Rule 504 "is intended to be consistent with the ethical obligations of confidentiality set forth in Rule 1.6 of the Utah Rules of Professional Conduct."). Likewise, the determination

of privilege for discovery purposes under Utah Rules of Civil Procedure 26(b)(1) should be made in harmony with Rule 504 of the Utah Rules of Evidence, which governs the attorney-client privilege. Neither Rule 504(d)(3), which supersedes the privilege rule found at Utah Code Ann. Section 78–24–8(2), nor Rule 1.6(b)(3) contains language limiting its application merely to defensive matters and fee collection, as State Farm urges, and we remain unpersuaded of the wisdom of such a construction.

864 (noting limited scope of disclosure and suggesting efforts to limit the disclosure, such as protective orders). The professional judgment of the former in-house attorney and the stringent limitations available to trial courts are of paramount importance in restricting disclosures within the bounds of Rule 1.6.

¶ 22 The trial court has numerous tools it must employ to prevent unwarranted disclosure of the confidential information, including " 'the use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings.' " *Fox Searchlight Pictures, Inc. v. Paladino*, 106 Cal.Rptr.2d 906, 921, 89 Cal.App.4th 294 (2001) (quoting *Gen. Dynamics Corp. v. Superior Court*, 7 Cal.4th 1164, 32 Cal.Rptr.2d 1, 876 P.2d 487, 504 (1994)). The liberal use of these tools, and others inherent in a trial court's authority to govern the conduct of proceedings, is a prudent and sufficient safeguard against overbroad disclosure. We note, however, that it remains the attorney's duty to minimize disclosures. While trial courts possess broad protective powers, any disclosures made by the attorney that are not reasonably necessary to the claim may still subject that attorney to professional discipline or litigation sanctions; a trial court's failure to prevent improper disclosure will not be a safe harbor for former in-house counsel who carelessly disclose more than is reasonably necessary to the claim.

## II.   THE TRIAL COURT'S ORDER

¶ 23 Having determined that Rule 1.9, by reference to Rule 1.6, allows limited disclosure of confidential material, we now examine the trial court's order in this case. It is evident that portions of the trial court's order cannot be sustained consonant with the provisions of Rules 1.6 and 1.9.

### A.   Trial Court's Prohibition
### on Disclosures

¶ 24 The first part of the trial court's order, prohibiting Spratley and Pearce "from disclosing (in this litigation or otherwise) confidential communications and information ex-

changed between Spratley or Pearce on one hand, and State Farm and/or its insureds on the other hand" cannot stand in its current form. Because we hold that Spratley and Pearce may disclose information reasonably necessary to establish their claim against State Farm, the trial court's order must be reversed, requiring, as it does, that Spratley and Pearce refrain from any disclosures, even within the litigation.

¶ 25 As noted in our discussion above, Spratley and Pearce may, consistent with their duties under the Rules of Professional Conduct, disclose matters relating to their representation of State Farm in a suit against State Farm, so long as those disclosures are reasonably necessary to that claim. Utah R. Prof'l Conduct 1.6(b)(3). Thus, within this litigation, Spratley and Pearce may disclose some material that would be precluded under the trial court's order. Disclosure, however, should proceed carefully and under the close supervision of the trial court. The trial court's utilization of the many tools at its disposal must carefully protect and limit disclosures so as to minimize the impact on the parties and the attorney-client relationship while still affording Spratley and Pearce the appropriate measure of justice.

¶ 26 Spratley and Pearce have made no claim against the insureds they represented during their employment in the CLC office and are not called upon to defend themselves against claims by those insureds. Accordingly, our pronouncements regarding the ability of Spratley and Pearce to disclose information reasonably necessary to their claim do not apply. However, information which neither discloses, nor from which is ascertainable the identities of former clients may be appropriate. Thus, statistical information or generic summaries of the alleged actions of State Farm in cases where Spratley and Pearce represented its insureds might be permissible. We affirm the portion of the trial court's order that prohibited disclosures of the insured clients' confidential information without the consent of those clients.

### B. Trial Court's Order to Return Documents

¶ 27 We must limit the trial court's order to Spratley and Pearce to return confidential documents and materials to State Farm to apply only to original documents and materials. Upon the termination of an attorney-client relationship, the client is entitled to possession of its original client file, but the attorney is permitted to retain copies at its own expense. Utah R. Prof'l Conduct 1.16(d). There is no indication in the record whether the documents retained by Spratley and Pearce are the originals from the client file, or whether Spratley and Pearce retained copies in accordance with Rule 1.16. We remand to the trial court for correct application of the order as modified.

### C. Trial Court's Disqualification Order

¶ 28 The trial court, in making its determination on the disqualification issue, employed a standard utilized by our court of appeals in past cases. That standard, explained by the case of *Cade v. Zions First National Bank,* 956 P.2d 1073, 1081 (Utah Ct.App.1998), would lead to disqualification if Spratley and Pearce had privileged information involving State Farm's trial strategy that was disclosed to Humpherys, and that disclosure threatened to taint the remaining proceedings in the case. Clearly the *Cade* test was not fashioned to apply to a factual situation like the one now before us and we must reverse the trial court's order of disqualification. We do not disapprove of the test outlined in *Cade,* only its application to this case.

¶ 29 Given our resolution of the trial court's order preventing disclosures in this litigation, we cannot sustain an order of disqualification against Humpherys or his firm. Spratley and Pearce must be able to seek the advice of counsel to prosecute their claim against State Farm. If chosen counsel could be disqualified because of disclosures made by the plaintiffs for the purpose of legal advice and representation, the ability to retain counsel in such matters would be illusory. Under the facts of this case we cannot sanction a result that would deprive Spratley

and Pearce of the opportunity to employ counsel.

¶ 30 State Farm argues that significant authority for the disqualification it seeks is found in similar cases. It cites cases such as *Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir.1975), for the proposition that attorneys for former in-house counsel who receive privileged and confidential communications from their client should be disqualified from representing that client. However, State Farm ignores the fact that the attorneys in *Hull* and other similar cases were disqualified from representing *other* litigants, not the former in-house counsel. *See, e.g., id.* at 571–72.

¶ 31 Representing a former in-house attorney as a client and learning the substance of confidential communications does not disqualify an attorney from representing that client, but it may require disqualification of the attorney from representing other clients. State Farm has opposed other litigants represented by Humpherys and his firm, but those cases are not now before us. The disqualification in this case was inappropriate.

### CONCLUSION

¶ 32 Spratley and Pearce represented State Farm and its insureds for many years and owe lawyers' duties of confidentiality to those former clients. Nevertheless, they may disclose State Farm's client confidences as reasonably necessary to make a claim against State Farm. We reverse the trial court's order insofar as it prohibits disclosures that would be reasonably necessary to Spratley and Pearce's claims against State Farm. We affirm the portion of the trial court's order that requires Spratley and Pearce to obtain the permission of any clients other than State Farm if Spratley and Pearce wish to use those clients' confidences in their suit against State Farm. Because Utah Rule of Professional Conduct 1.16(d) provides that lawyers may retain copies of a former client's file at their own expense after returning the original file to the client, we revise the trial court's order requiring return of confidential documents to State Farm to apply to original documents. We reverse the

trial court's order disqualifying Humpherys and Christensen & Jensen from representing Spratley and Pearce in this case because, although Humpherys may have become privy to State Farm's confidential communications with Spratley and Pearce, the remedy of disqualification is inappropriate. Former in-house counsel must be free to employ legal counsel in cases against their former employers and an order of disqualification in this case would prevent Spratley and Pearce from receiving effective legal counsel because any attorney they hired who received enough information to prosecute the suit would be similarly disqualified. Thus, we affirm in part and reverse in part, remanding for proceedings consistent with this opinion.

¶ 33 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.