881 So.2d 607 (2004)
Judith M. ALEXANDER, Petitioner,
v.
TANDEM STAFFING SOLUTIONS, INC., a Delaware corporation, Staffing Group East, L.L.C., a Delaware limited liability company, Thomas McKeown, individually, and Loughlin Meghji & Company, Inc., a New York corporation, Respondents.
No. 4D04-224.
District Court of Appeal of Florida, Fourth District.
July 7, 2004.
Rehearing Denied September 22, 2004.
*608 Stuart A. Rosenfeldt and Melissa B. Lewis of Rothstein, Rosenfeldt, Dolin & Pancier, P.A., Fort Lauderdale, for petitioner.
Raymond V. Miller, Virginia Herrero Pagliery and Helaina Bardunias of Gunster, Yoakley & Stewart, P.A., Miami, for respondents Tandem Staffing Solutions, Inc., a Delaware corporation and Staffing Group East, L.L.C., a Delaware limited liability company.
GROSS, J.
This is a petition for writ of certiorari filed by Judith M. Alexander, the plaintiff in the circuit court, challenging an order granting the defendants' motion to disqualify her counsel. Because the applicable rule of professional conduct permitted Alexander's disclosure to her lawyer of confidences reasonably necessary to make a case against respondents, we grant Alexander's petition.
Alexander is one of three former employees who filed separate whistleblower[1] lawsuits against their former employer, Tandem Staffing Solutions, Inc. and a related company, Staffing Group East, L.L.C. ("Respondents"). Alexander was Tandem's general counsel. The other employees were Carolyn Noonan and Nicholas Halliday. In July 2002, Noonan and Halliday reported to Alexander that a company officer was accessing sex-related websites on the internet. Alexander initiated an investigation. One upshot of the investigation was that Alexander was fired.
Before she was fired, Alexander consulted with attorney Stuart Rosenfeldt concerning her fear of retaliation by Tandem. With Rosenfeldt, she discussed the ongoing situation at Tandem. Rosenfeldt assisted Alexander in preparing a letter dated September 8, 2002 to members of Tandem's board of directors. The letter opined that a company officer had violated federal law, detailed tales of retaliation and cover-up, and described the company's potential liability. Alexander signed the letter in her capacity as general counsel. Arguably, the letter was an attempt to comply with the requirement of section 448.102(1), Florida Statutes (2003) that the employee, "in writing," bring an "activity, policy, or practice to the attention of a supervisor or the employer."
Respondents argue that the circuit court properly disqualified Rosenfeldt because Alexander disclosed to him "Tandem's attorney-client privileged information." Citing General Accident Insurance Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986), respondents contend that receipt of attorney-client privileged information, "regardless of the source," should result in disqualification of a lawyer because of the tactical disadvantage that such disclosure may produce.
"Disqualification of a party's chosen counsel is an extraordinary remedy and should only be resorted to sparingly." Singer Island, Ltd. v. Budget Constr. Co., 714 So.2d 651, 652 (Fla. 4th DCA 1998); Vick v. Bailey, 777 So.2d 1005, 1007 (Fla. 2d DCA 2000). Motions for disqualification are generally viewed with skepticism *609 because disqualification of counsel impinges on a party's right to employ a lawyer of choice, and such motions are often interposed for tactical purposes. See Evans v. Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir.1983); Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir.1988) (observing that "the ability to deny one's opponent the services of capable counsel, is a potent weapon"). Confronted with a motion to disqualify, a court must be sensitive to the competing interests of requiring an attorney's professional conduct and preserving client confidences and, on the other hand, permitting a party to hire the counsel of choice.
Florida Rule of Professional Conduct 4-1.6(a) provides that "[a] lawyer shall not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client consents after disclosure to the client." As one exemption from the rule of non-disclosure, rule 4-1.6(c)(2) provides in pertinent part:
(c) When Lawyer May Reveal Information. A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
...
(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client[.]
Rule 4-1.6's "principle of confidentiality is given effect in ... the attorney-client privilege ... in the law of evidence." R. Regulating Fla. Bar 4-1.6 Cmt. Similar to rule 4-1.6(c)(2), the evidence code permits the disclosure of otherwise protected attorney-client information when "[a] communication is relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer, arising from the lawyer-client relationship." § 90.502(4)(c), Fla. Stat. (2003).
Alexander's whistleblower claim was a "controversy between the lawyer and client" within the meaning of rule 4-1.6(c)(2) and an "issue of breach of duty ... by the client to the lawyer" under section 90.502(4)(c). Thus, her disclosures to Rosenfeldt reasonably pertaining to the claim fell outside the privilege, so that there was no basis to disqualify Rosenfeldt from representing Alexander.
Such a ruling is consistent with the well-reasoned opinion of the Utah Supreme Court in Spratley v. State Farm Mutual Automobile Insurance Co., 78 P.3d 603 (Utah 2003), a case involving the application of the attorney-client privilege to a lawsuit brought against a company by former in-house counsel. There, the court discussed the application of Utah Rule of Professional Conduct 1.6(b)(3),[2] which is worded almost identically to Florida's rule 4-1.6(c)(2).
Spratley involved two in-house attorneys who represented State Farm and its insureds. "Concluding that they could not meet their ethical duties as attorneys and comply" with State Farm's allegedly unlawful and unethical demands, the attorneys resigned from State Farm and retained confidential documents and materials. Id. at 606. The attorneys sued State Farm for a number of wrongful discharge claims, including retaliation and breach of contract. Id. On State Farm's motion, the trial court disqualified the attorneys' chosen legal counsel, prohibited them from disclosing confidential communications, *610 and required them to return documents they had retained from their representation of State Farm. Id. at 605-06.
The Utah Supreme Court reversed, holding that the attorneys' wrongful discharge suit was a "claim" within the meaning of rule 1.6(b)(3), so that the attorneys were permitted to make disclosures "reasonably necessary to that claim." Id. at 608. The court looked at the plain language of the rule, compared it to an earlier version[3] of the rule, and concluded that the exception to confidentiality had been enlarged from earlier versions of the ABA Model Rules of Professional Conduct. The court observed that the ABA "confirmed" the intention to expand the exception
in a Formal Ethics Opinion, which found the Model Rules did not prohibit the use of confidential information in a suit brought by former in-house counsel. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 01-424.
Id. The court also cited to the "other authorities [that] have approved of an expansion of the scope of the `claim or defense' exception in cases involving wrongful discharge claims by former in-house counsel." Id. For example,
[i]n a formal ethics opinion of its own, the Oregon State Bar ruled that the "claim or defense" exception to Rule 1.6 plainly permits "disclosure to establish a wrongful discharge claim." Oregon State Bar Legal Ethics Comm., Formal Op.1994-136 at 3. The plain language of our rule also supports such an interpretation, and representative cases from other jurisdictions illustrate that the policy embodied in Rule 1.6 is in harmony with that interpretation. Burkhart v. Semitool, Inc., 300 Mont. 480, 5 P.3d 1031 (2000); Crews v. Buckman Labs. Int'l, Inc., 78 S.W.3d 852 (Tenn.2002).
Id. at 608-09 (emphasis in original).
Quoting from Burkhart and Crews, the Spratley court identified the policy considerations that "weigh[ed] in favor of allowing disclosure, in a limited fashion, of confidential client information in a suit by former in-house counsel for wrongful dishcharge." Spratley, 78 P.3d at 609. "`[T]he `public interest is better served [when] in-house counsel's resolve to comply with ethical ... duties is strengthened by providing judicial recourse when an employer's demands are in direct and unequivocal conflict with those duties.'" Id. (quoting Crews, 78 S.W.3d at 862 (quoting GTE Prods. Corp. v. Stewart, 421 Mass. 22, 653 N.E.2d 161, 166 (1995))). "`[A] lawyer ... does not forfeit his rights simply because to prove them he must utilize confidential information. Nor does the client gain the right to cheat the lawyer by imparting confidences to him.'" Id. (quoting Burkhart, 5 P.3d at 1041 (quoting Doe v. A Corp., 709 F.2d 1043, 1050 (5th Cir.1983))).
Finally, while adopting an expansive, "literal interpretation" of the rule of professional conduct, Spratley was careful to note that the former in-house attorney has a "duty to minimize disclosures" and that the trial court
has numerous tools it must employ to prevent unwarranted disclosure of the confidential information, including "`the use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and, where appropriate, in camera proceedings.'" Fox *611 Searchlight Pictures, Inc. v. Paladino, 106 Cal.Rptr.2d 906, 921, 89 Cal.App.4th 294 (2001) (quoting Gen. Dynamics Corp. v. Superior Court, 7 Cal.4th 1164, 32 Cal.Rptr.2d 1, 876 P.2d 487, 504 (1994)). The liberal use of these tools, and others inherent in a trial court's authority to govern the conduct of proceedings, is a prudent and sufficient safeguard against overbroad disclosure.
Id. at 609-10.
Respondents read an earlier case from this court, Borg-Warner, too broadly. In that case, a circuit judge inadvertently sent to the opposing side privileged materials in an insurer's claim file that it was supposed to review in an in-camera inspection. 483 So.2d at 505-06. Opposing counsel reviewed the file, "[n]ot realizing the file had been sent to him inadvertently." Id. at 506. The trial court denied the defendant's motion to disqualify opposing counsel. This court reversed, based primarily upon its concern that opposing counsel "had acquired an unfair advantage by virtue of the inadvertent disclosure" of the insurer's claim file and certain privileged documents. Id.
Borg-Warner does not control this case. There the mistaken revelations to opposing counsel fell under no exception to non-disclosure contained in rule 4-1.6. Here, Alexander's disclosure of matters to Rosenfeldt and the September 8th letter were reasonably necessary to her whistleblower claim, so that the matters fell under rule 4-1.6(c)(2), making their disclosure authorized.
Respondents' claim that Rosenfeldt was a de facto attorney for Tandem is not well taken. This is not a case where Tandem could have reasonably believed that it had an attorney-client relationship with Rosenfeldt, so that he could be expected to advance Tandem's interests. No corporate representative consulted with Rosenfeldt in a way that reposed the corporation's trust and confidence in the attorney. The situation here is very different from the state of affairs in Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225 (2d Cir.1977). There, a law firm was precluded from handling litigation against an existing client, Arthur Andersen & Co. The lawyer who brought suit against Arthur Andersen was also disqualified because he had such an extensive, intimate relationship to the law firm that he became an aider and abettor of the law firm's ethical violations and was privy to confidential information. Id. at 233. This case involves no such extensive relationship between Rosenfeldt and either Tandem or Alexander that involved matters outside of Alexander's potential whistleblower claim.
Glueck v. Jonathan Logan, Inc., 653 F.2d 746 (2d Cir.1981), is similarly inapplicable. As framed by the second circuit, the issue in Glueck was whether "a law firm that represents an incorporated trade association may represent an individual client in a suit against a corporation one division of which is a member of the association." Id. at 747. Part of the court's holding, in concluding that the law firm was disqualified, was that
[d]isqualification will ordinarily be required whenever the subject matter of a suit is sufficiently related to the scope of the matters on which a firm represents an association as to create a realistic risk either that the plaintiff will not be represented with vigor or that unfair advantage will be taken of the defendant.
Id. at 750. Again, this case does not involve Rosenfeldt's representation of a client, such as a trade association, that *612 would allow him to take unfair advantage of Tandem in this litigation.
Petition granted.
POLEN, J., concurs.
GUNTHER, J., dissents without opinion.
NOTES
[1] The Florida Whistleblower Act is found at sections 448.101-.105, Florida Statutes (2003). Because the issue is not now before us, we do not decide any issue pertaining to Alexander's claim under the Act.
[2] Utah Rule of Professional Conduct 1.6(b)(3) "allows disclosure `to the extent the lawyer reasonably believes necessary ... [such as] ... [t]o establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client.'" Spratley v. State Farm Mut. Aut. Ins. Co., 78 P.3d 603, 608 (Utah 2003).
[3] The older version of ABA Model Rule of Professional Responsibility 1.6(b)(3) "provided that a lawyer may reveal `[c]onfidences or secrets necessary to establish or collect his fee.'" Spratley, 78 P.3d at 608 (quoting ABA Annotated Model Rules of Prof'l Conduct 68 (5th ed.2003)).