[827 NYS2d 231]

SHAYA B. PACIFIC, LLC, Appellant, v WILSON, ELSER, MOSKO-
WITZ, EDELMAN & DICKER, LLP, Respondent.

Second Department, December 19, 2006

**APPEARANCES OF COUNSEL**

*Dinkes & Schwitzer*, New York City (*William Dinkes* of counsel), for appellant.

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, New York City (*Thomas W. Hyland, Richard E. Lerner* and *Brett Scher* of counsel), respondent pro se.

**OPINION OF THE COURT**

FISHER, J.

The principal issue presented on this appeal concerns whether a law firm, retained by a primary carrier to defend its insured

in a pending action, has any obligation to investigate whether the insured has excess coverage available and, if so, to file a timely notice of excess claim on the insured's behalf.

## I

On April 1, 2000, Kazimierz Golebiewski was seriously injured while performing demolition work at the premises of the plaintiff, Shaya B. Pacific, LLC. As a result, Golebiewski and his wife commenced a personal injury action against the plaintiff and others. In July 2000 the plaintiff's primary carrier, Certain Underwriters at Lloyd's of London (hereinafter Lloyd's), retained the defendant, Wilson, Elser, Moskowitz, Edelman and Dicker, LLP to defend the plaintiff in the personal injury action.

The policy limit of Lloyd's' primary policy was $1,000,000. Golebiewski was seeking damages of $52,500,000. Consequently, on January 25, 2001, a representative of Lloyd's wrote to the plaintiff, stating in relevant part:

> "As you know suit has been filed in this matter. We must advise you that the demand in the suit papers of $52,500,000 is in excess of your policy limits of $1,000,000 per occurrence. As such you may wish to engage counsel of your own choice at your own expense to act on your behalf in regards to any potential excess judgments. We can advise that we are continuing the defense of this matter on your behalf through the Law Offices of Wilson, Elser, Moskowitz, Edelman & Dicker.

> "Furthermore you may wish to check with your insurance agent to determine if any excess insurance coverage is in force. If so we would urge you to quickly notify any excess insurance carrier of this suit situation."

In February 2003 Golebiewski was awarded summary judgment against the plaintiff on the issue of liability under Labor Law § 240 (1). On or about April 24, 2003, before the commencement of the trial on the issue of damages, the defendant law firm, on the plaintiff's behalf, tendered the case to National Union Fire Insurance Company (hereinafter National Union) for further defense and for indemnification with respect to the excess claim. National Union had issued a commercial umbrella policy to Greendel Developers, Ltd. (hereinafter Greendel). Greendel was not a party to Golebiewski's action against the plaintiff, and its relationship to the plaintiff, if any, was not revealed in the record before us.

In any event, by letter dated May 14, 2003, and addressed, inter alia, to both Greendel and the plaintiff, National Union declined the tender and disclaimed coverage on the ground that it had not received timely notice of Golebiewski's action. Additionally, National Union claimed it had no information to confirm that the plaintiff was an insured under the excess policy.

On or about October 22, 2003, Golebiewski obtained a judgment against the plaintiff on his Labor Law claim in the principal sum of $5,694,320, and his wife obtained a judgment against the plaintiff on her derivative claim in the principal sum of $795,000. On March 8, 2004, the plaintiff commenced the instant action against the defendant law firm, asserting causes of action sounding in legal malpractice and breach of contract. In its complaint, the plaintiff claimed that the defendant had been negligent in failing to advise National Union of the underlying action or, alternatively, that its failure to do so constituted a breach of contract.

The defendant law firm thereafter moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), arguing that (1) the plaintiff failed to establish its status as an insured under the National Union policy, and therefore could not establish causation, (2) any negligence on the defendant's part was not a proximate cause of the loss of excess coverage because the firm was retained more than three months after the plaintiff first became aware of the need to notify any excess carrier, and approximately two months after the plaintiff became aware of the Golebiewski action, and (3) in any event, as the defense counsel provided by the plaintiff's primary carrier, the defendant law firm had no duty to advise the plaintiff concerning coverage issues. The Supreme Court granted the motion and dismissed the complaint. This appeal followed.

## II

To begin with, it is important to emphasize that this appeal comes to us from an order granting a prediscovery motion to dismiss, not an order granting summary judgment. The standards governing such prediscovery motions are familiar. A motion to dismiss made pursuant to CPLR 3211 (a) (1) will fail unless the documentary evidence that forms the basis of the defense resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim (*see McCue v County of Westchester*, 18 AD3d 830, 831 [2005]; *see also Held v Kaufman*, 91 NY2d 425, 430-431 [1998]; *Leon v Martinez*, 84 NY2d

83, 88 [1994]; *Trade Source v Westchester Wood Works*, 290 AD2d 437, 438 [2002]; *Teitler v Pollack & Sons*, 288 AD2d 302 [2001]). Moreover, a motion to dismiss made pursuant to CPLR 3211 (a) (7) will fail if, taking all facts alleged as true and according them every possible inference favorable to the plaintiff, the complaint states in some recognizable form any cause of action known to our law (*see e.g. AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 590-591 [2005]; *Leon v Martinez, supra* at 87-88; *Hayes v Wilson*, 25 AD3d 586 [2006]; *Marchionni v Drexler*, 22 AD3d 814 [2005]; *Rinaldi v Casale*, 13 AD3d 603, 604-605 [2004]). Whether the complaint will later survive a motion for summary judgment, or whether the plaintiff will ultimately be able to prove its claims, of course, plays no part in the determination of a prediscovery CPLR 3211 motion to dismiss (*see EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

In light of these standards, and considering the circumstances of the case and the arguments advanced by the parties, the defendant law firm would be entitled to dismissal pursuant to CPLR 3211 (a) (1) if it could establish either that the letter dated January 25, 2001, conclusively proved that the scope of its representation never encompassed any responsibility with respect to possible excess coverage or, alternatively, that the disclaimer letter of May 14, 2003, conclusively established that the plaintiff was not an insured under the excess policy. To succeed on its motion to dismiss pursuant to CPLR 3211 (a) (7), the defendant would have to establish either that, as a matter of law, it owed the plaintiff no duty to identify and notify potential excess carriers or, alternatively, that any negligence on the defendant's part in failing to do so, as a matter of law, did not proximately cause the loss of excess coverage.

## III

The defendant failed to show that the January 25, 2001, letter from Lloyd's to the plaintiff conclusively established that the scope of the firm's representation was limited. The letter stated only that the plaintiff "may wish to engage" separate counsel to act on its behalf with respect to any "potential excess judgments" beyond the $1,000,000 primary policy limits, and invited the plaintiff to investigate any possible excess coverage. The letter also confirmed that Lloyd's was "continuing the defense of this matter on [the plaintiff's] behalf through the

Law Offices of [Wilson Elser]."[1] Thus, the letter, standing alone, failed to resolve conclusively all material issues of fact regarding the scope of the defendant's representation.

The dissent would place on the plaintiff the initial burden of pleading sufficient evidentiary facts to establish that the scope of the defendant's representation specifically included the duty to investigate excess coverage. Legal malpractice actions, however, are not subject to special pleading requirements (compare CPLR 3014 with CPLR 3016). Thus, a legal malpractice plaintiff need not, in order to assert a viable cause of action, specifically plead that the alleged malpractice fell within the agreed scope of the defendant's representation. Rather, a legal malpractice defendant seeking dismissal pursuant to CPLR 3211 (a) (1) must tender documentary evidence conclusively establishing that the scope of its representation did not include matters relating to the alleged malpractice. The defendant here has failed to do so.

Likewise without merit is the defendant's contention that any negligence on its part could not have been a proximate cause of the plaintiff's loss of excess coverage because the disclaimer letter of May 14, 2003, conclusively established that the plaintiff was not an insured under the National Union policy. Contrary to the view expressed by our dissenting colleague, we find that the disclaimer letter itself is, at best, inconclusive, stating only that the plaintiff "[is] not listed as [a] named insured[] on the Policy" and that National Union had "no information to confirm [that the plaintiff is an insured] as defined in Section IV (E) [of the Policy]." Having failed to tender a copy of the underlying policy, the defendant cannot conclusively establish that such policy afforded the plaintiff no coverage. Thus, that branch of the defendant's motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (1) should have been denied.

Nor did the defendant establish that the plaintiff's claim for excess coverage was already stale by July 2000, when the defendant law firm was first retained. Although the plaintiff arguably had knowledge of Golebiewski's accident in April 2000, it is unclear when the plaintiff first learned that his claim might exceed the limits of the primary policy. Moreover, inasmuch as the plaintiff was not a named insured under the National Union policy, it is unclear when the plaintiff first knew, or first should

---

1. Moreover, we note that the interpretation of the letter now pressed by the defendant is inconsistent with the defendant's act, in April 2003, of tendering the plaintiff's notice of claim to National Union.

have known, that such policy might afford excess coverage for the accident. These questions raise issues of fact that, at minimum, warrant the development of a full record.[2]

## IV

■ We turn, then, to the central question presented on this appeal: Whether a law firm retained by a carrier has any duty to ascertain whether the insured it was hired to represent has available excess coverage, or to file a timely notice of excess claim on the insured's behalf. The issue is best addressed by examining two questions. The first is whether, under ordinary circumstances, an attorney retained directly by a defendant in a personal injury action has any obligation to investigate the availability of insurance coverage for his or her client and to see that timely notices of claim are served; the second is whether, if such an obligation exists, it also binds an attorney who is retained to defend a personal injury action, not by the defendant directly, but by the defendant's carrier.

On the first question, the defendant law firm contends that there is no authority in this state for the proposition that a legal malpractice action may be maintained against an attorney for failing to investigate an insurance coverage issue or for failing to notify a client's carrier of a potential claim. We disagree (*see Fireman's Fund Ins. Co. v Farrell*, 289 AD2d 286 [2001]; *cf. Perks v Lauto & Garabedian*, 306 AD2d 261 [2003]).

Moreover, *Darby & Darby v VSI Intl.* (95 NY2d 308 [2000]), relied on by the defendant, does not support its position. In that case, a corporate client asserted a claim for legal malpractice based on its law firm's failure to advise it of possible coverage under a CGL policy for expenses relating to a patent infringement action. In upholding the dismissal of the legal malpractice claim, the Court of Appeals noted that the corporate client's claim "is based on a then novel theory that patent insurance coverage was available under an 'advertising liability' clause in general liability policies" (*id.* at 312). After noting that "the theory of such coverage remained largely undeveloped at the

---

2. The dissent again would place on the plaintiff, at the pleading stage, the burden of establishing, through specific evidentiary facts, that notice would have been timely if given in July 2000, when the defendant was first retained. The CPLR, however, imposes no such specific pleading requirement. It is sufficient for the complaint to allege that the defendant's failure to timely notify the excess carrier resulted in the loss of coverage. Causation—or lack thereof—may properly be challenged by way of a motion for summary judgment once a factual record has been developed.

time of [the law firm's] representation, with only a handful of courts, particularly in California, finding a duty to defend patent infringement claims," the Court held that the law firm "should not be held liable for failing to advise [the clients] about a novel and questionable theory pertaining to their insurance coverage" (*id.* at 314). The Court did *not* hold, however, that an attorney may *never* be held liable for failing to discover available insurance coverage. Indeed, by stressing the "novel and questionable" nature of the theory of coverage involved in the case (*id.*), the Court may well have been implying that, had the availability of coverage been clear at the time of the representation, a different result would have been reached.

In any event, it seems self-evident that the question whether, in the ordinary case, an attorney could be found negligent for failing to investigate insurance coverage would turn primarily on the scope of the agreed representation—a question of fact—and on whether, in light of all relevant circumstances, the attorney "failed to exercise the reasonable skill and knowledge commonly possessed by a member of the legal profession" (*Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300, 303-304 [2001]; *see Darby & Darby v VSI Intl., supra* at 313; *Levy v Greenberg*, 19 AD3d 462 [2005]). We cannot say, as a matter of law, that a legal malpractice action may never lie based upon a law firm's failure to investigate its client's insurance coverage or to notify its client's carrier of a potential claim.[3]

The defendant nevertheless contends that, whatever the duty of counsel retained directly by a defendant, the duty of counsel appointed and paid by an insurance carrier is more limited. Indeed, the defendant argues that insurance defense counsel *never* has any obligation to investigate coverage issues, as that "would violate every principle of the tri-partite relationship that exists between an insurer, an insured, and appointed defense counsel."

---

**3.** The dissent recognizes that "there may be situations where an attorney in the representation of a client may have a duty to investigate the existence of additional insurance coverage" (dissenting op at 47). Nevertheless, as stated earlier, the dissent would hold, as a matter of law, that no viable malpractice claim can be asserted unless the plaintiff *specifically* pleads evidentiary facts sufficient to establish the existence of such duty under the particular circumstances of the case. Such a holding would, in effect, work a judicial amendment of CPLR 3016 by adding legal malpractice to the list of actions subject to specific pleading requirements.

The subject of the so-called tripartite relationship of insured, insurer, and insurance defense counsel has been extensively examined (*see generally* Silver and Syverud, *The Professional Responsibilities of Insurance Defense Lawyers*, 45 Duke LJ 255 [1995]; *see also* Pryor and Silver, *Defense Lawyers' Professional Responsibilities: Part II—Contested Coverage Cases*, 15 Geo J Legal Ethics 29 [2001]; Baker, *Liability Insurance Conflicts and Defense Lawyers: From Triangles to Tetrahedrons*, 4 Conn Ins LJ 101 [1997-1998]; Jerry, *Consent, Contract, and the Responsibilities of Insurance Defense Counsel*, 4 Conn Ins LJ 153 [1997-1998]). In some jurisdictions, an attorney retained by a carrier has been held to have a lawyer-client relationship only with the insured (*see e.g. Barefield v DPIC Cos., Inc.*, 215 W Va 544, 558, 600 SE2d 256, 270 [2004]; *In re Rules of Professional Conduct & Insurer Imposed Billing Rules & Procedures*, 299 Mont 321, 333, 2 P3d 806, 814 [2000]; *Atlanta Intl. Ins. Co. v Bell*, 438 Mich 512, 475 NW2d 294 [1991]; *First Am. Carriers, Inc. v Kroger Co.*, 302 Ark 86, 90, 787 SW2d 669, 671 [1990]; *Continental Cas. Co. v Pullman, Comley, Bradley & Reeves*, 929 F2d 103, 108 [2d Cir 1991]; *see also Jackson v Trapier*, 42 Misc 2d 139 [1964]). In others, the attorney-client relationship may, under certain conditions—including the absence of a conflict of interest—extend to the carrier as well (*see e.g. General Sec. Ins. Co. v Jordan, Coyne & Savits, LLP*, 357 F Supp 2d 951 [ED Va 2005]; *Spratley v State Farm Mut. Auto. Ins. Co.*, 78 P3d 603 [Utah 2003]; *Gulf Ins. Co. v Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 79 Cal App 4th 114, 125-127, 93 Cal Rptr 2d 534, 542-543 [2000]; *Pine Is. Farmers Coop v Erstad & Riemer, P.A.*, 649 NW2d 444 [Minn 2002]; *cf. Paradigm Ins. Co. v Langerman Law Offs., P.A.*, 200 Ariz 146, 24 P3d 593 [2001]).

The defendant argues, in effect, that it had an attorney-client relationship with Lloyd's as well as with the plaintiff, and that, with respect to insurance coverage, the interests of its two clients were in conflict. Assuming without deciding that in New York a law firm retained by a carrier to represent its insured may have an attorney-client relationship with both, and assuming further that such was the case here, we see no conflict of interest in the circumstances at bar.

Both the plaintiff and Lloyd's had a shared interest in defeating the Golebiewskis' claim and in securing a defense verdict. Beyond that, Lloyd's' interest was in keeping the verdict as low as possible and below its policy limit. If the verdict could not be kept within its policy limit, Lloyd's had no interest in the

amount by which that limit was exceeded. The plaintiff's interest, on the other hand, was to see that the verdict remained within its overall coverage. Thus, while the plaintiff had an important interest in the existence, availability, and amount of excess coverage, Lloyd's did not.

We recognize that a conflict may have arisen here had the issue concerned the scope or nature of the coverage afforded to the plaintiff by Lloyd's' primary policy. But Lloyd's had no interest in the existence or extent of excess coverage available to the plaintiff and therefore the defendant would not have breached any duty owed to Lloyd's by advising the plaintiff on issues of excess coverage. Thus, we reject the defendant's contention that to have given such advice would have violated the tripartite relationship.

Consequently, just as we are unprepared to say, as a matter of law, that a failure to investigate the existence of excess insurance coverage may never give rise to a legal malpractice action against an attorney retained directly by a defendant in a personal injury action, we take the same view with respect to an attorney who is retained, not by the defendant directly, but by its carrier. Accordingly, the defendant's prediscovery motion to dismiss the cause of action sounding in legal malpractice should have been denied.

The Supreme Court properly dismissed the cause of action to recover damages for breach of contract, however, as it was merely duplicative of the legal malpractice claim (*see Shivers v Siegel*, 11 AD3d 447 [2004]; *Ferdinand v Crecca & Blair*, 5 AD3d 538, 539 [2004]; *Magnacoustics, Inc. v Ostrolenk, Faber, Gerb & Soffen*, 303 AD2d 561, 562-563 [2003]; *Senise v Mackasek*, 227 AD2d 184, 185 [1996]).

LIFSON, J. (dissenting). The issue presented is fairly narrow: Did the complaint set forth sufficient facts to sustain a viable cause of action to recover damages for legal malpractice or, alternatively, whether the cause of action should have been summarily dismissed based on the documentary proof submitted. Because I believe that the majority would impose a duty on lawyers that has heretofore not been recognized by any court in this state, I respectfully dissent. Moreover, I note that the plaintiff's proof was insufficient to defeat the defendant's motion.

The complaint herein asserts that Kazimierz Golebiewski, a plaintiff in an action to recover damages for personal injuries,

was injured in April 2000 in a construction accident at premises owned by the plaintiff. The complaint in pertinent part merely alleged that the defendant law firm committed malpractice by its failure to timely and properly notify the plaintiff's excess insurance carrier of the accident and lawsuit. Thus, to prevail, the plaintiff must allege and establish that the defendant law firm had such a duty (assuming such a duty existed), and that the defendant's failure to perform such duty was the proximate cause of the plaintiff's damages. For the reasons stated below, I believe that the complaint is deficient. Moreover, even if the complaint was not fatally flawed, the plaintiff failed to demonstrate that a triable issue of fact exists as to the potential malpractice of the defendant law firm.

The evidence submitted on the defendant's motion established the following: Upon being notified of the claim, the plaintiff forwarded the complaint in the underlying action to its insurance broker. In turn, the plaintiff's insurance broker notified the plaintiff's primary insurance carrier and allegedly notified the plaintiff's excess insurance carrier.[1] The proof also demonstrated that sometime in July 2000 the defendant law firm was assigned as counsel to defend the underlying action. Thereafter, the plaintiff's primary carrier, Certain Underwriters at Lloyd's of London (hereinafter Lloyd's), by letter dated January 25, 2001, advised the plaintiff that Lloyd's would defend the claim on its behalf and that it had provided the services of the defendant law firm for that purpose.[2] The letter also noted that the amount sought in the underlying personal injury action exceeded the limits of its coverage under the primary policy of insurance. The letter went on to state, in pertinent part: "Furthermore you may wish to check with your insurance agent to determine if any excess insurance coverage is in force. If so *we would urge you to quickly notify any excess insurance carrier* of this suit situation" (emphasis added).

The complaint in the instant legal malpractice action alleges that the defendant law firm tendered the coverage under the primary policy after a motion for summary judgment on the issue of liability in the underlying action was granted. Before the

1. The latter contention is not alleged in the underlying complaint. However, the defendant law firm attached copies of pleadings in an ancillary action wherein the plaintiff made the unequivocal statement of providing such notice to its broker.

2. No explanation is offered as to the large gap of time from the appointment of the defendant law firm to the defendant's issuance of the letter advising the plaintiff of its representation.

damages portion of the trial in the underlying action, the defendant law firm notified the excess carrier and requested that it defend and indemnify the plaintiff at the damages portion of the trial in the underlying action. The excess carrier denied that it had ever received notice of the underlying claim from the insurance broker in January 2001. In denying coverage, the excess carrier took the position that the plaintiff was not a named insured and, even if that were not the case, the notice tendered to it was untimely. Ultimately a judgment in excess of the primary carrier's policy limits was issued against the plaintiff. The plaintiff asserts that it did have excess insurance coverage available to it and submitted proof of a temporary binder to that effect, and that the defendant law firm took no steps to investigate the existence of such coverage or to properly notify the excess carrier of the claim. The within action, inter alia, to recover damages for legal malpractice ensued.

We recently observed in *Lichtenstein v Barenbaum* (23 AD3d 440, 440 [2005]), that

> "[i]n order to establish a cause of action to recover damages for legal malpractice, a plaintiff must prove that (1) the attorney failed to exercise the care, skill, and diligence commonly possessed by a member of the legal profession, (2) the attorney's conduct was a proximate cause of the loss sustained, (3) the plaintiff suffered actual damages as a direct result of the attorney's actions or inaction, and (4) but for the attorney's negligence, the plaintiff would have prevailed in the underlying action (*see Porello v Longworth*, 21 AD3d 541 [2005]; *Levy v Greenberg*, 19 AD3d 462 [2005]; *Dimond v Kazmierczuk & McGrath*, 15 AD3d 526 [2005]; *Pistilli v Gandin*, 10 AD3d 353 [2004])."

An examination of the subject complaint reveals that it fails to allege sufficient facts to establish each of the requisite elements of a cause of action to recover damages for legal malpractice. Because the complaint does not assert facts establishing the duty owed, it fails to allege that the defendant law firm did not exercise the care and skill one could reasonably expect of the legal community (*see Tortura v Sullivan Papain Block McGrath & Cannavo, P.C.*, 21 AD3d 1082 [2005]). The complaint also failed to adequately allege facts showing that the attorney's alleged breach of that duty was the proximate cause of the loss sustained (*see Ferdinand v Crecca & Blair*, 5 AD3d 538 [2004]).

The complaint, even given the greatest of deference, merely consists of conclusory allegations of malpractice.

More significantly, the defendant law firm offered documentary proof that the plaintiff's claim was rejected primarily on the expressed grounds that the plaintiff was not a covered party to the excess insurance policy in question. The defendant therefore met its initial burden by negating the possibility that any inaction on its part led to the disclaimer. In response, the plaintiff merely submitted an attorney's affidavit accompanied by an exhibit consisting of an alleged temporary binder of its insurance broker, issued more than six weeks before the accident in question. No copy of the excess insurance policy upon which coverage is claimed was presented and there is no proof by a person possessed of personal knowledge that such a valid policy of excess insurance (covering the insured for the incident in question) ever existed by the issuance of a policy of insurance or an extension of a valid temporary binder of insurance pertaining to the plaintiff as an insured party. Thus, the plaintiff's proof is simply insufficient and the cause of action to recover damages for legal malpractice was properly dismissed.

The facts as established by the various submissions also clearly indicated that the defendant law firm demonstrated that there was no breach of any duty owed to the plaintiff. Assuming that such a policy of excess insurance existed, the record shows that such policy would include language which would obligate its named insured to notify the excess carrier of the occurrence as soon as practicable and to notify it immediately of any lawsuit. Although no absolute time period has ever been established for such obligations, it has been held that the failure to provide such notice within a reasonable time is fatal to a claim for coverage (*see Matter of American Cas. Ins. Co. v Silverman*, 271 AD2d 528 [2000]). The burden is upon the insured to demonstrate that timely notice was given to the carrier (*see Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d 742 [2005]). In some instances the failure to provide such notice within a 60-day time period has proved fatal to the claim (*see Heydt Contr. Corp. v American Home Assur. Co.*, 146 AD2d 497 [1989]; *Power Auth. of State of N.Y. v Westinghouse Elec. Corp.*, 117 AD2d 336 [1986]).

Assuming that a valid policy of excess insurance existed and that the plaintiff was an insured under that policy, the plaintiff has failed to allege or establish that, upon being designated as the plaintiff's counsel by the primary carrier, had the defendant

law firm given immediate notice to the excess carrier, that such notice would have been timely. Therefore, the defendant established that the plaintiff failed to allege and establish the "but for" standard that is a requisite of any malpractice action (*Levy v Greenberg, supra; see Porello v Longworth, supra; Dimond v Kazmierczuk & McGrath, supra; Pistilli v Gandin, supra*). Therefore, no action to recover damages for legal malpractice can be sustained (*see Perks v Lauto & Garabedian*, 306 AD2d 261 [2003] [where an action to recover damages for legal malpractice was dismissed where a successor attorney to the defendant attorney also had an opportunity to investigate possible additional insurance coverage for a plaintiff]).

The foregoing begs the central issue here, to wit, that there is no case law in this state that imposes upon the attorney assigned by a primary carrier *to verify* that excess coverage indeed does not exist. At the outset, I accept that there may be situations where an attorney in the representation of a client may have a duty to investigate the existence of additional insurance coverage. For example, a plaintiff's attorney instituting an action to recover damages for injuries sustained as a result of a defendant's negligent operation of an automobile is expected to explore all possible avenues of insurance coverage (*see Perks v Lauto & Garabedian, supra*). Similarly, in a personal injury action where recovery for lost wages is sought, a defendant's attorney may have a duty to explore the extent, if any, of potential diminishment of the defendant's exposure through the plaintiff's resort to relief pursuant to the provisions of the Workers' Compensation Law (*see Fireman's Fund Ins. Co. v Farrell*, 289 AD2d 286 [2001]). However, in both such cases the circumstances were such that the attorney was expected to have a superior capability to ascertain the existence of alternative coverage to that of the client.

On the other hand, where the circumstances are such that the client has superior or equal knowledge of potential sources of additional coverage, unless requested to investigate by the client, the attorney has no duty to explore hypothetical theories of additional insurance coverage (*see Darby & Darby v VSI Intl.*, 95 NY2d 308 [2000]). In a somewhat analogous case (an action brought against the primary carrier alleging breach of a fiduciary duty to notify the excess carrier) involving circumstances indicating that the insured had the same knowledge as its primary carrier of potential excess coverage, the Appellate Division, Third Department, stated, in pertinent part: "Having had

essentially the same information as defendant, plaintiff should not be permitted to shift to defendant the responsibility for failing to notify the excess carrier, an obligation imposed on plaintiff alone by its contract with the excess carrier. At most, plaintiff's evidence establishes defendant's erroneous belief that plaintiff's liability would not exceed the primary policy limits" (*Monarch Cortland v Columbia Cas. Co.*, 224 AD2d 135, 137-138 [1996]).

The facts here are far more compelling. The record indicates that the only party with knowledge of the incident and the potential need for excess coverage was the plaintiff. The record also indicates that the plaintiff had an obligation to notify the excess carrier of the happening of the incident (i.e., an obligation that preceded any designation of counsel on the primary policy of insurance after the commencement of the underlying action). The insured's contractual responsibility to notify its alleged excess insurance carrier cannot be avoided or diminished through the subterfuge of attempting to foist such obligation on an unsuspecting law firm selected by the primary carrier particularly where, as here, the law firm may have been assigned the case after the time to notify the excess carrier had expired. The failure of the complaint to allege such circumstances which, if proved, would establish that the sole cause of the plaintiff's injury was the negligence of the defendant law firm, as previously discussed, is fatal. I therefore conclude that whether viewed as a motion pursuant to CPLR 3211 (a) (1) or (7), the subject complaint was properly dismissed. Accordingly, I would affirm the order, and I therefore respectfully dissent.

SCHMIDT, J.P., and RIVERA, J., concur with FISHER, J.; LIFSON, J., dissents in a separate opinion.

Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion which was to dismiss the first cause of action sounding in legal malpractice and substituting a provision therefor denying that branch of the motion; as so modified, the order is affirmed, with costs.